284 P.3d 905

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Samuel WALKER, also known as Samuel Ahsan, Defendant–Appellant.**

**No. 29659.**

Intermediate Court of Appeals of Hawai'i.

Sept. 30, 2011.

Reconsideration Denied Oct. 18, 2011.

Henry P. Ting, Deputy Public Defender, on the briefs, for Defendant–Appellant.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

FUJISE and LEONARD, JJ, with NAKAMURA, C.J., dissenting.

Opinion of the Court by FUJISE, J.

Defendant–Appellant Samuel Walker also known as Samuel Ahsan (Walker) appeals from the January 26, 2009 judgment of conviction entered by the Circuit Court of the First Circuit[1] (circuit court) for, in Count 1, Habitually Operating a Vehicle Under the Influence of an Intoxicant (HOVUII) in violation of Hawaii Revised Statutes (HRS) § 291E–61.5 (2007 & Supp.2010)[2]; in Count

---

1. The Honorable Michael A. Town presided.

2. HRS § 291E–61.5 states in relevant part as follows:

   **§ 291E–61.5 Habitually operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:

   (1) The person is a habitual operator of a vehicle while under the influence of an intoxicant; and
   (2) The person operates or assumes actual physical control of a vehicle:
   (A) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

2, Operating a Vehicle after License and Privilege have been Suspended or Revoked for Operating a Vehicle Under the Influence of an Intoxicant in violation of HRS § 291E–62(a)(2) (2007); and in Count 3, Consuming or Possessing Intoxicating Liquor While Operating a Motor Vehicle in violation of HRS § 291–3.1 (2007). On appeal, Walker challenges the judgment with regard to Count 1 only.

The dispositive issue raised in this appeal is the sufficiency of the HOVUII charge where it fails to include the definition of a "habitual operator of a vehicle while under the influence of an intoxicant" (habitual operator).

■ A circuit court's determination of whether or not a charge sufficiently alleges the elements of an offense is subject to de novo review on appeal. *State v. Wheeler*, 121 Hawai'i 383, 219 P.3d 1170 (2009). Walker first objected to the charge prior to the verdict and therefore the liberal construction rule does not apply. "Our adoption of this liberal construction standard is limited to construing indictments, when the issue is only raised *after* trial." *State v. Motta*, 66 Haw. 89, 94, 657 P.2d 1019, 1022 (1983) (footnote omitted).

In Count 1, Walker was charged as follows:

> (B) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;
> (C) With .08 or more grams of alcohol per two hundred ten liters of breath; or
> (D) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.
> b) For the purposes of this section:
> "Convicted three or more times for offenses of operating a vehicle under the influence" means that, at the time of the behavior for which the person is charged under this section, the person had three or more times within ten years of the instant offense:
> (1) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for a violation of this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5;
> (2) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for an offense that is comparable to this section or section 291–4, 291–4.4, or 291–7

On or about the 17th day of April, 2008, in the City and County of Honolulu, State of Hawaii, SAMUEL WALKER, also known as SAMUEL AHSAN, a habitual operator of a vehicle while under the influence of an intoxicant, did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, thereby committing the offense of Habitually Operating a Vehicle Under the Influence of an Intoxicant, in violation of Sections 291E–61.5(a)(1) and 291E–61.5(a)(2)(A) of the Hawaii Revised Statutes.

The minimum requirements for a criminal charge are set by statute.

**Sufficiency of averments as to offense and transaction.** In an indictment the offense may be charged either by name or by reference to the statute defining or making it punishable; and the transaction may be stated with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed, as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court has

> as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5; or
> (3) An adjudication of a minor for a law or probation violation that, if committed by an adult, would constitute a violation of this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5;
> that, at the time of the instant offense, had not been expunged by pardon, reversed, or set aside. All convictions that have been expunged by pardon, reversed, or set aside prior to the instant offense shall not be deemed prior convictions for the purposes of proving the person's status as a habitual operator of a vehicle while under the influence of an intoxicant.
> A person has the status of a "habitual operator of a vehicle while under the influence of an intoxicant" if the person has been convicted three or more times within ten years of the instant offense, for offenses of operating a vehicle under the influence of an intoxicant.

jurisdiction, and to give the accused reasonable notice of the facts.

Averments which so charge the offense and the transaction shall be held to be sufficient.

HRS § 806–34 (1993). Although the statute was written using the permissive "may," the Hawai'i Supreme Court has construed HRS § 806–34 to set forth mandatory requirements for a charge. *State v. Stan's Contracting, Inc.*, 111 Hawai'i 17, 31, 137 P.3d 331, 345 (2006) (HRS § 806–34 . . ., states that an indictment *must* set forth the details of the transaction involving the defendant) (emphasis added). The court tied the requirements of the "details of the transaction" of HRS § 806–34 to article I, section 14 of the Hawai'i Constitution, protecting the accused's right "to be informed of the nature and cause of the accusation." *Id.* (internal quotation marks omitted). The Hawai'i Supreme Court also construed as mandatory, the allegation of facts establishing jurisdiction. *Stan's Contracting*, 111 Hawai'i at 32, 137 P.3d at 346 ("jurisdiction of the offense charged and of the person of the accused is a fundamental and indispensable prerequisite to a valid prosecution") (internal quotation marks omitted) quoting *Adams v. State*, 103 Hawai'i 214, 221, 81 P.3d 394, 401 (2003).

■ HRS § 806–34 treats the requirements for identification of the offense separately from requirements for the description of the transaction. The identification of the offense under HRS § 806–34 is satisfied by reference to the statute defining the offense. ("In an indictment the offense may be charged either by name or by reference to the statute defining or making it punishable.") HRS § 806–34 requires that the description of the transaction (1) identifies the transaction; (2) brings the transaction within the definition of the offense; (3) shows that the court has jurisdiction; and (4) gives notice of the facts to the accused. The statute's reference to the definition of the offense appears to be a requirement alleging the elements of an offense. Since the allegation of a criminal offense cognizable under the laws of the State is a jurisdictional requirement (*see* HRS § 603–21.5(1) (Supp.2010)[3] and HRS § 604–8 (Supp.2010)[4]) items 2 and 3 appear to be requirements of jurisdiction. *See also State v. Kekuewa*, 114 Hawai'i 411, 424, 163 P.3d 1148, 1161 (2007), *abrogated on other grounds as recognized by Loher v. State*, 118 Hawai'i 522, 193 P.3d 438 (App. 2008). ("In other words, an oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect[.]"). Therefore, the factual description of the transaction has a jurisdictional component and is in addition to the requirement of giving the defendant "reasonable notice of the facts." HRS § 806–34.

3. HRS § 603–21.5 provides,

> **General.** (a) The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute, of:
> (1) Criminal offenses cognizable under the laws of the State, committed within their respective circuits or transferred to them for trial by change of venue from some other circuit court;
> . . . .
> (b) The several circuit courts shall have concurrent jurisdiction with the family court over:
> (1) Any felony under section 571–14, violation of an order issued pursuant to chapter 586, or a violation of section 709–906 when multiple offenses are charged through complaint or indictment and at least one other offense is a criminal offense under subsection (a)(1);
> (2) Any felony under section 571–14 when multiple offenses are charged through complaint or indictment and at least one other offense is a violation of an order issued pursuant to chapter 586, a violation of section 709–906, or a misdemeanor under the jurisdiction of section 604–8; [and]
> (3) Any violation of section 711–1106.4[.]

4. HRS § 604–8 provides:

> **Criminal, misdemeanors, generally.** (a) District courts shall have jurisdiction of, and their criminal jurisdiction is limited to, criminal offenses punishable by fine, or by imprisonment not exceeding one year whether with or without fine. They shall not have jurisdiction over any offense for which the accused cannot be held to answer unless on a presentment or indictment of a grand jury.
> . . . .
> (b) The district court shall have concurrent jurisdiction with the family court of any violation of an order issued pursuant to chapter 586 or any violation of section 709–906 when multiple offenses are charged and at least one other offense is a criminal offense within the jurisdiction of the district courts.

Hawai'i Rules of Penal Procedure (HRPP) Rule 7(d) reflects a similar distinction between the requirements for the description of the offense charged and the facts giving rise to the charge. With respect to the identification of the charge, HRPP Rule 7(d) requires that "[t]he charge shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law[.]" With respect to the description of the transaction, HRPP Rule 7(d) requires that "[t]he charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged." The general rule is codified in HRS § 806–26 (1993), which provides that the use of a statutorily defined term is sufficient to convey its statutorily defined meaning:

> The words and phrases used in an indictment shall be construed according to their usual acceptation, except words and phrases which have been defined by law or which have acquired a legal signification, which words and phrases shall be construed according to their legal signification and shall be sufficient to convey that meaning.

■ However, compliance with the requirements for identification of the charge under HRS § 806–34 and HRPP Rule 7(d) does not necessarily satisfy the requirements for the allegation of the transaction, as citation to the statute would not cure the failure to allege an element of an offense. *State v. Elliott*, 77 Hawai'i 309, 312, 884 P.2d 372, 375 (1994). Where the statute employs generic terms that do not convey the specifics of what the prosecution must prove, a charge in the language of the statute may be insufficient. *See e.g., State v. Cummings*, 101 Hawai'i 139, 143, 63 P.3d 1109, 1113 (2003) (charge of Driving Under the Influence under HRS § 291–4(a)(1) (Supp.1998) that did not include defendant was under the influence "in an amount sufficient to impair the person's normal mental faculties or ability to

care for oneself and guard against casualty" was fatally deficient).

In *Wheeler*, 121 Hawai'i at 395, 219 P.3d at 1182, the court relied in part on HRS § 806–31 which requires that the accusation be comprehensible to a person of "common understanding."

> **Indirect allegations.** No indictment or bill of particulars is invalid or insufficient for the reason merely that it alleges indirectly and by inference instead of directly any matters, facts, or circumstances connected with or constituting the offense, provided that the nature and cause of the accusation can be understood by a person of common understanding.

HRS § 806–31 (1993).[5] In *Wheeler*, the Hawai'i Supreme Court held that "[t]he use of the phrase 'operate' did not provide adequate notice to Wheeler that the State was required to prove that his operation of the vehicle occurred on a public way, street, road, or highway." *Wheeler*, 121 Hawai'i at 395, 219 P.3d at 1182.

Just as the word "operate" does not suggest operation on a public road, "habitual operator" does not convey the narrow definition that the person charged had three prior convictions within the previous ten years. *See* HRS § 291E–61.5(b). The word "habitual" is defined as "of the nature of a habit; fixed by or resulting from habit...." *Random House Webster's Unabridged Dictionary* 856 (2d ed.2001). The word "habit" is defined as "an acquired behavior pattern regularly followed until it has become almost involuntary[.]" *Id.* Black's Law Dictionary defines "habitual" as "[c]ustomary; usual" as the primary definition and "[r]ecidivist" as a secondary definition. *Black's Law Dictionary* 779 (9th ed.2009).

*State v. Mita*, 124 Hawai'i 385, 245 P.3d 458 (2010), is not to the contrary. In *Mita*, the offense in question was "Animal Nuisance" as defined by the Revised Ordinances

---

**5.** HRS § 806–31 is consistent with the general rule that words of a statute are to have their commonly understood meaning. HRS § 1–14 (2009):

> **Words have usual meaning.** The words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning.

of Honolulu (ROH) § 7–2.2 [6] and 7–2.3 [7]. Mita was issued a citation which was described as follows:

> The citation, signed "Wanda Mita[,]" stated that Mita " [d]id on/or about this *3* day of *June* Yr *08* at about *1940–2050* did own, harbour or keep (animal description): *Boxers* Name *Roxy/Obie* Color *Brown* ... at (location): [*Mita's residence address* ] and did commit the offense of: ... animal nuisance-Sec: *7–2.3 Barking Dog* [.]" Additionally, the citation had a section entitled "Officer's Report" which stated that "Mita was issued a Barking 3rd citation. She was already issued a previous Barking 2 warning citation."

*Id.*, 124 Hawai'i at 386, 245 P.3d at 459. At trial, the prosecution presented the following oral charge:

> On or about June 3rd, 2008, in the city and county of Honolulu, state of Hawaii, you as the owner of an animal, farm animal, or poultry engaged in animal nuisance as defined in section 7–2.2, thereby violating section 7–2.3 of the Revised Ordinances of Honolulu.

*Id.* Mita challenged the charge at trial, arguing that under *State v. Jendrusch*, 58 Haw. 279, 567 P.2d 1242 (1977), she was entitled to know what conduct, prescribed in ROH § 7–2.2, she was accused of violating. *Mita*, 124 Hawai'i at 387, 245 P.3d at 460. The Hawai'i

---

Supreme Court distinguished *Wheeler* as follows:

> In *Wheeler*, the defendant was orally charged with operating a vehicle under the influence of an intoxicant (OVUII). 121 Hawai'i at 386–87, 219 P.3d at 1173–74. The charge tracked the language of the relevant statute, HRS § 291E–61, and alleged that the defendant "did operate or assume actual physical control of a motor vehicle while under the influence of alcohol...." *Id.* However, the charge did not further include the definition of the term "operate," which was defined in HRS § 291E–1 as "to drive or assume actual physical control of a vehicle *upon a public way, street, road, or highway...*." *Id.* at 391, 219 P.3d at 1178 (emphasis in original). This court held that HRS § 291E–1 establishes an attendant circumstance of the proscribed conduct, i.e., that the offense of OVUII occur on a public way, street, road, or highway. *Id.* at 392–93, 219 P.3d at 1179–80. Therefore, since the location of the proscribed conduct established by HRS § 291E–1 was an attendant circumstance, this court held that it was an essential element of the offense of OVUII that should have been included within the charge against the defendant. *Id.* (citing HRS § 702–205 (1993)). [7]

---

This court emphasized that although the charge tracked the language of the statute,

---

6. ROH § 7–2.2 provides, in pertinent part,
"Animal nuisance," for the purposes of this section, shall include but not be limited to any animal, farm animal or poultry which:
 (a) Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property;
 (b) Barks, whines, howls, crows, cries or makes any other unreasonable noise as described in Section 7–2.4(c) of this article; or
 (c) Notwithstanding the provisions of HRS Section 142–75 or any other applicable law, bites or stings a person.
"Animals," unless provided otherwise, include but are not limited to those animals that are customary and usual pets such as dogs, cats, rabbits, birds, honeybees and other beasts which are maintained on the premises of a dwelling unit and kept by the resident of the dwelling unit solely for personal enjoyment and companionship, such as, without limitation, for a hobby, for legal sporting activities and for guarding of property; excluding aviary game birds and fish as defined in the Hawaii Revised Statutes.

7. ROH § 7–2.3 provides, in pertinent part,
**Animal nuisance—Prohibited.**
It is unlawful to be the owner of an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7–2.2; provided, however, that it shall not be deemed to be animal nuisance for purposes of this article if, at the time the animal, farm animal or poultry is making any noise, biting or stinging, a person is trespassing or threatening trespass upon private property in or upon which the animal, farm animal or poultry is situated, or for any other legitimate cause which teased or provoked said animal, farm animal or poultry.

the term "operate" as used in HRS § 291E–61 "is neither 'unmistakable' nor 'readily comprehensible to persons of common understanding'" and therefore did not provide the defendant with fair notice of that aspect of the charge. *Id.* at 394–95, 219 P.3d at 1181–82 (citation omitted). Specifically, this court concluded that the common understanding of the term "operate" "does not geographically limit where the conduct must take place." *Id.* at 394, 219 P.3d at 1181. Therefore, merely including the term "operate" in the charge, without providing the defendant with notice that his conduct must have occurred "upon a public way, street, road, or highway," was insufficient. *Id.* Additionally, this court recognized that "none of the other information in the charge provided [the defendant] with fair notice of that element" where, for example, the charge "did not contain any specification of where the alleged offense occurred, other than it took place in the City and County of Honolulu." *Id.* at 395, 219 P.3d at 1182.

There are two significant factors present in the instant case that were not present in *Wheeler,* thus making it readily distinguishable: (1) the definition of "animal nuisance" in ROH § 7–2.2 does not create an additional essential element of the offense; and (2) in any event, the definition of "animal nuisance" is consistent with its commonly understood meaning and therefore Mita had fair notice of the offense charged. Thus, the oral charge against Mita, which tracked the language of ROH § 7–2.3, sufficiently alleged all of the essential elements of the offense of animal nuisance.

---

7. HRS § 702–205 provides: "The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition of the offense, and (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction)."

*Mita,* 124 Hawai'i at 390–91, 245 P.3d at 463–64.

On the other hand, the charge of HOVUII is essentially a recidivist offense and virtually the only difference between it and the offense of Operating a Vehicle Under the Influence of an Intoxicant (OUVII) under HRS § 291E–61 is the number of previous convictions required for an HOVUII conviction. The term "habitual," or even "habitual operator," does not convey the specificity of the term for HOVUII purposes. Thus, it does not qualify as a term used as commonly understood. HRS § 806–31.

Moreover, although discussed in different contexts, the Hawai'i Supreme Court has determined on a number of occasions that the prior convictions for OVUII is an attendant circumstance, and thus is an additional element of the offense.

Thus, in *State v. Ruggiero,* 114 Hawai'i 227, 239, 160 P.3d 703, 715 (2007), the Hawaii Supreme Court held that:

> Inasmuch as we conclude, supra, that a prior conviction, as described in HRS § 291E–61(b)(2) (Supp.2003), is an elemental attendant circumstance, intrinsic to the offense of operating a vehicle under the influence of an intoxicant, it was necessary that Ruggiero's prior conviction be alleged in the charging instrument and proven at trial as preconditions to his present conviction of operating a vehicle under the influence of an intoxicant for the second time within five years, in violation of HRS § 291E–61(a) and (b)(2).

Similarly, in *State v. Domingues,* when determining whether the present HOVUII statute was a re-enactment of the predecessor statute, HRS § 291–4.4(a), the court held that the language "during a ten-year period the person has been convicted three or more times for a driving under the influence offense[,]" included as an element of the offense in HRS § 291–4.4(a) but removed from the provision defining the offense and placed into the sentencing provisions of HRS § 291E–61, retained its character as an attendant circumstance. 106 Hawai'i 480, 487, 107 P.3d 409, 416 (2005) (internal quotation marks omitted). The court went on to note,

> Indeed, "[a]n offense under [HRS § 291E–61 (b)(4)] is a class C felony,"... entitling a defendant to a jury trial, whereas the offenses described in HRS §§ 291E–61(b)(1) through 291E–61(b)(3) would appear to be petty misdemeanors, as to which no right to a jury trial would

attach. *See id.* If the prefatory language of HRS §§ 291E–61(b)(1) through 291E–61(b)(4) were mere "sentencing factors" that the prosecution was not obliged to allege and prove to the trier of fact, as Domingues suggests, then defendants charged with HRS § 291E–61 offenses would have no idea what the particular offense was that they were charged with committing or whether they were entitled to a jury trial.

*Id.* at 487 n. 8, 107 P.3d at 416 n. 8.

■ A charge must state all the essential elements of an offense. *Wheeler*, 121 Hawai'i at 391, 219 P.3d at 1178; *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374 citing *State v. Jendrusch*, 58 Haw. 279, 567 P.2d 1242 (1977) ("In *Jendrusch*, we held that the failure to allege an essential element of an offense made a charge 'fatally defective.' "). This requirement is not necessarily satisfied by a reference to or recitation of the statute. *See State v. Israel*, 78 Hawai'i 66, 73–74, 890 P.2d 303, 310–311 (1995). Proof beyond a reasonable doubt that Walker was a "habitual operator of a vehicle while under the influence of an intoxicant" as that phrase might be understood given the words usual meaning (*see* HRS § 1–14 (2009)), would not necessarily result in a conviction. A conviction would only lie upon proof that Walker "has been convicted three or more times within ten years of the instant offense, for offenses of operating a vehicle under the influence of an intoxicant" as prescribed in HRS § 291E–61.5(b). Thus, the three prior convictions are attendant circumstance elements of the offense. *See Ruggiero*, 114 Hawai'i at 239, 160 P.3d at 715.

Since proof of each element of the offense is required for a conviction (HRS § 701–114(1)(a)), the proof of three or more convictions within the previous ten years is an element of the offense and therefore should have been included in the charge.

Therefore, we vacate the January 26, 2009 judgment of the Circuit Court of the First Circuit in Count 1 and remand the case with instructions to the circuit court to dismiss Count 1 without prejudice.

**Dissenting Opinion by NAKAMURA, C.J.**

I respectfully dissent.

The core purpose of a criminal charge is "to apprise the accused of the charges against him [or her], so that [the accused] may adequately prepare his [or her] defense...." *State v. Vanstory*, 91 Hawai'i 33, 44, 979 P.2d 1059, 1070 (1999) (internal quotation marks and citation omitted). The sufficiency of a charge is measured by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet." *State v. Mita*, 124 Hawai'i 385, 390, 245 P.3d 458, 463 (2010) (internal quotation marks, citation, and brackets omitted).

The charge against Defendant–Appellant Samuel Walker (Walker) for Habitually Operating a Vehicle Under the Influence of an Intoxicant (Habitual OVUII) alleged that Walker had the status of "a habitual operator of a vehicle while under the influence of an intoxicant" (the "habitual offender phrase") when he again operated a vehicle under the influence of an intoxicant (OVUII). The habitual offender phrase tracked the language of the statute proscribing the offense and is statutorily defined to mean a person with three or more prior OVUII convictions within ten years of the charged offense.

Hawaii Revised Statutes (HRS) § 806–26 (1993) provides that in construing an indictment, "words and phrases which have been defined by law or which have acquired a legal signification ... shall be construed according to their legal signification and shall be sufficient to convey that meaning." Here, the statutory definition of the habitual offender phrase is consistent with the common understanding and clear import of the phrase. As used in the context of a criminal offender, the term "habitual" is commonly understood to mean a recidivist, a person with multiple convictions for the same offense. In my view, the Habitual OVUII charge gave Walker, who was represented by counsel, fair notice of the attendant circumstances element regarding his habitual offender status (the "habitual offender element") and adequately apprised him of what he must be prepared to meet. Accordingly, I reject

Walker's contention that the Habitual OVUII charge was deficient for failing to sufficient allege the habitual offender element.

I also believe that the other arguments raised by Walker on appeal do not entitle him to any relief. Walker contends that: (1) the Circuit Court of the First Circuit (Circuit Court) erred in failing to suppress his statement to a police officer that he had consumed eight or nine beers; (2) the Circuit Court erred in admitting evidence of Walker's performance on the Horizontal Gaze Nystagmus (HGN) test; and (3) there was insufficient admissible evidence to support Walker's conviction for Habitual OVUII. I would affirm Walker's Habitual OVUII conviction.

## BACKGROUND

### I.

Honolulu Police Department Officer Morgan Hill (Officer Hill) was on duty on April 17, 2008, just before midnight, when the sound of Walker's truck "burning rubber" attracted the officer's attention. From a distance of about 200 yards, Officer Hill heard Walker's tires screeching for three to five seconds and Walker's engine "revving really loud." Walker's truck accelerated past Officer Hill, traveling at a high rate of speed, much higher than the posted twenty-five mile per hour speed limit, and in a manner that Officer Hill believed was unsafe. Officer Hill pursued Walker and pulled him over.

Walker indicated that he did not have a driver's license. Officer Hill saw that Walker's eyes were red, glassy, and bloodshot, detected a strong odor of an alcoholic beverage coming from Walker's breath, and noticed that Walker's speech was slightly slurred. Officer Hill also observed a open beer bottle on the center console of Walker's truck. Officer Hill asked if Walker had been drinking that night, and Walker responded that he "drank eight or nine beers earlier" and that he was "okay" and lived nearby.

Officer Hill asked Walker to step out of the vehicle and participate in a standardized field sobriety test (SFST), which consists of the HGN test, the walk-and-turn test, and

the one-leg stand test. In administering the HGN test, Officer Hill observed "heavy nystagmus," an indication of possible alcohol impairment. Walker did not perform the walk-and-turn test in accordance with Officer Hill's instructions, as Walker lifted his arms to maintain his balance on several occasions and failed to walk heel-to-toe in two of his steps. Walker declined to take the one-leg stand test. After the SFST, Officer Hill placed Walker under arrest. Walker had previously been convicted of OVUII on June 14, 2007, December 28, 2004, and October 31, 2003.

### II.

Walker was charged in Count 1 with Habitual OVUII as follows:

> *COUNT 1:* On or about the 17th day of April, 2008, in the City and County of Honolulu, State of Hawaii, SAMUEL WALKER, also known as SAMUEL AH-SAN, a habitual operator of a vehicle while under the influence of an intoxicant, did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, thereby committing the offense of Habitually Operating a Vehicle Under the Influence of an Intoxicant, in violation of Sections 291E–61.5(a)(1) and 291E–61.5(a)(2)(A) of the Hawaii Revised Statutes.

Walker was also charged with Operating a Vehicle After License and Privilege Have Been Suspended or Revoked for Operating a Vehicle Under the Influence of an Intoxicant (Count 2) and Consuming or Possessing Intoxicating Liquor While Operating a Motor Vehicle (Count 3).[1]

Prior to trial, Walker filed a motion to suppress his statement to Officer Hill that Walker had drunk only about eight or nine beers. After an evidentiary hearing, the Circuit Court denied Walker's suppression motion. Walker waived his right to a jury trial. At trial, the parties stipulated to the Circuit Court's consideration of Officer Hill's sup-

---

1. Walker did not challenge his convictions on Counts 2 and 3 on appeal.

pression hearing testimony, and they also presented additional evidence.

After trial had begun, Walker objected to the admission of evidence regarding Walker's prior convictions. Walker argued that Plaintiff–Appellee State of Hawai'i (State) had failed to adequately allege Walker's prior convictions in the Habitual OVUII charge and thus had only charged him with OVUII as first-time offender, thereby rendering his prior convictions irrelevant. The Circuit Court denied Walker's challenge to the sufficiency of the Habitual OVUII charge and his objection to the admission of the prior convictions. The Circuit Court found Walker guilty as charged on all counts.

The Circuit Court subsequently issued written Findings of Fact and Conclusions of Law, which provided in pertinent part as follows:

### CONCLUSIONS OF LAW

1. There is no defect in the charging instrument in this case. The State has alleged all the elements of the offense including the attendant circumstances in the complaint by specifying that Defendant was "a habitual operator of a vehicle while under the influence of an intoxicant."

2. "Habitual" is only used in a habitual OVUII statute, and it clearly has a unique meaning in the Hawaii Penal Code. *Hawaii Revised Statutes,* § 291–E61.5 ("H.R.S."). The use of the words "habitual operator" under *State v. Kekuewa,* 114 Hawai'i 411, 418, 163 P.3d 1148 (2007) in the complaint in the instant case: (1) gives notice to Defendant that he has a right to a jury trial and (2) gives notice to the Circuit Court that it has jurisdiction because the offense is a class C felony under H.R.S. § 291–E61.5.

3. The interaction between Defendant and Officer Hill from the time of the stop to the time of Defendant's response regarding drinking 8 or 9 beers was not a custodial interrogation under *State v. Wyatt,* 67 Haw. 293, 687 P.2d 544 (1984).

4. *Even without considering Defendant's admission of drinking 8 or 9 beers and his performance on the HGN phase of the SFST,* this Court finds that Defendant was under the influence of an intoxicant as he drove on a public street and was impaired beyond a reasonable doubt under *State v. Ferm,* 94 Hawai'i 17, 25, 7 P.3d [193] 202 (2000); *State v. Vliet,* 91 Haw. 288, 293–94, 988 [983] P.2d 189, 194–95 (1999).

(Emphasis added.)

### DISCUSSION

#### I.

Walker contends that the Habitual OVUII charge was defective for failing to adequately allege the habitual offender element necessary to charge Habitual OVUII under HRS § 291E–61.5 (2007 & Supp.2010). In particular, Walker argues that the Habitual OVUII charge was deficient because it only alleged that Walker was a "habitual operator of a vehicle while under the influence of an intoxicant" (habitual offender phrase) and did not also allege the statutory definition of that phrase, namely, that Walker had three or more prior OVUII convictions within ten years of the charged offense. I disagree with Walker's claim that the Habitual OVUII charge was deficient.

#### A.

HRS § 291E–61.5 provides in relevant part as follows:

(a) A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:

(1) The person is a habitual operator of a vehicle while under the influence of an intoxicant; and

(2) The person operates or assumes actual physical control of a vehicle:

(A) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

(B) While under the influence of any drug that impairs the person's ability to

operate the vehicle in a careful and prudent manner;

(C) With .08 or more grams of alcohol per two hundred ten liters of breath; or

(D) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

(b) For the purposes of this section:

"Convicted three or more times for offenses of operating a vehicle under the influence" means that, at the time of the behavior for which the person is charged under this section, the person had three or more times within ten years of the instant offense:

(1) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for a violation of this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5;

(2) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for an offense that is comparable to this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5; or

(3) An adjudication of a minor for a law or probation violation that, if committed by an adult, would constitute a violation of this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5;

that, at the time of the instant offense, had not been expunged by pardon, reversed, or set aside. All convictions that have been expunged by pardon, reversed, or set aside prior to the instant offense shall not be deemed prior convictions for the purposes of proving the person's status as a habitual operator of a vehicle while under the influence of an intoxicant.

A person has the status of a "habitual operator of a vehicle while under the influence of an intoxicant" if the person has been convicted three or more times within ten years of the instant offense, for offenses of operating a vehicle under the influence of an intoxicant.

### B.

"[T]he purpose of an indictment is to apprise the accused of the charges against him [or her], so that [the accused] may adequately prepare his [or her] defense, and to describe the crime charged with sufficient specificity to enable [the accused] to protect against future jeopardy for the same offense." *Vanstory*, 91 Hawai'i at 44, 979 P.2d at 1070 (internal quotation marks and citation omitted). The Hawai'i Supreme Court has provided the following guidelines for evaluating the sufficiency of a charge:

> The sufficiency of the charging instrument is measured, inter alia, by whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet. In other words, the ... charge must be worded in a manner such that the nature and cause of the accusation could be understood by a person of common understanding. The relevant inquiry, therefore, is whether or not the charge provided the accused with fair notice of the essential elements.

*Mita*, 124 Hawai'i at 390, 245 P.3d at 463 (2010) (internal quotation marks, citations, and brackets omitted). "Whether a charge sets forth all the essential elements of a charged offense is a question of law, which we review under the de novo, or right/wrong, standard." *Id.* at 389, 245 P.3d at 462 (internal quotation marks, brackets, ellipsis points, and citation omitted).

Ordinarily, a charge which tracks the language of the statute proscribing the offense is sufficient. *See State v. Cordeiro*, 99 Hawai'i 390, 406, 56 P.3d 692, 708 (2002); *State v. Silva*, 67 Haw. 581, 585, 698 P.2d 293, 296 (1985). As a general rule, "where the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient." *State v. Wheeler*, 121 Hawai'i 383,

393, 219 P.3d 1170, 1180 (2009) (internal quotation marks, citations, and brackets omitted).

HRS § 291E–61.5(a) establishes the Habitual OVUII offense and sets forth its essential elements. HRS § 291E–61.5(b) contains the definition of terms used in establishing the Habitual OVUII offense. Here, the Habitual OVUII charge against Walker tracked the language of HRS § 291E–61.5(a)(1) and (a)(2)(A), the statute proscribing the Habitual OVUII offense charged in Count 1, and provided Walker with fair notice of the essential elements of the charged offense. Indeed, Walker does not contend that the language of the Habitual OVUII charge left him unaware or confused about what the State was required to prove.

### C.

HRS § 806–26 specifically provides that the use in an indictment of words and phrases defined by statute shall be sufficient to convey their statutorily-defined meaning. HRS § 806–26 refutes Walker's contention that the Habitual OVUII charge was deficient because it did not allege the statutory definition of the habitual offender phrase. HRS § 806–26 states:

> **Meaning of words and phrases.** The words and phrases used in an indictment shall be construed according to their usual acceptation, *except words and phrases which have been defined by law or which have acquired a legal signification, which words and phrases shall be construed according to their legal signification and shall be sufficient to convey that meaning.*

(Emphasis added.) Count 1 alleged that Walker was "a habitual operator of a vehicle while under the influence of an intoxicant," an attendant circumstances essential element of the charged Habitual OVUII offense and a phrase "defined by law" in HRS § 291E–61.5(b). Pursuant to HRS § 806–26, the allegation of the habitual offender phrase was sufficient to convey its statutorily-defined meaning.

Walker, however, argues that the failure to allege the statutory definition of the habitual offender phrase rendered the Habitual OVUII charge deficient under *Wheeler.* I disagree.

*Wheeler* involved the unusual situation in which the statutory definition of a term used in the offense statute (1) created an additional essential element and (2) departed from the commonly understood meaning of the term to such an extent that the term itself failed to provide fair notice of the additional element. In that situation, the constitutional requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[,]" U.S. Const. amend. VI; Haw. Const. art. I, § 14, trumps the provisions of HRS § 806–26. However, where the unusual *Wheeler* conditions are not present, HRS § 806–26 is applicable.

In *Mita,* the Hawai'i Supreme Court made clear that *Wheeler* turned on its particular facts and does not generally require the State to allege the statutory definition of an offense term for a charge to be sufficient. The supreme court stated:

> *Wheeler* does not require that the State provide statutory-definitions in every charge which tracks the language of a statute that includes terms defined elsewhere in the code. Requiring the State to do so would render charges unduly complex, in contravention of the policy reflected in HRPP [ (Hawai'i Rules of Penal Procedure) ] Rule 7(d) that "[t]he charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged." *Rather, as this court concluded in Wheeler, the State need only allege the statutory definition of a term when it creates an additional essential element of the offense, and the term itself does not provide a person of common understanding with fair notice of that element.*

*Mita,* 124 Hawai'i at 391–92, 245 P.3d at 464–65 (emphasis and some brackets added).

Unlike in *Wheeler,* the statutory definition of the habitual offender phrase does not create an additional essential element for the Habitual OVUII offense. The habitual offender element is already embodied in the habitual offender phrase which is part of the offense statute. The statutory definition of

the habitual offender phrase simply elaborates on the meaning of that phrase with details that are consistent with the phrase's, commonly understood meaning.

Moreover, unlike in *Wheeler*, there is no discord between the habitual offender phrase and its statutory definition. The word "habitual" is defined to include: (1) "[r]ecidivist <habitual offender>" in Black's Law Dictionary 779 (9th ed.2009); and (2) "being such a specified number of times or with designated regularity <habitual offenders>" in Merriam–Webster's Dictionary of Law (1996). Particularly when used in the context of a criminal offender, the phrase "habitual operator of a vehicle while under the influence of an intoxicant" is consistent with its statutory definition as a person who has been convicted of OVUII three or more times within ten years of the charged offense. Thus, the State's use of the habitual offender phrase gave Walker fair notice of the habitual offender element.[2]

There are sound policy reasons for not requiring the State to allege the statutory definition of an offense term in every charge for the charge to be sufficient. As the supreme court explained in *Mita*, "[r]equiring the State to do so would render charges unduly complex, in contravention of the policy reflected in HRPP Rule 7(d) that '[t]he charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged.'" *Mita*, 124 Hawai'i at 391–92, 245 P.3d at 464–65 (some brackets in original). This case presents a useful example. The complete statutory definition of the habitual offender phrase, including the definition of terms embedded in that phrase, is by my count roughly 300 words long.

Moreover, the Hawai'i Penal Code is structured to establish criminal offenses through the use of terms that have separate statutory definitions, typically contained in a separate definition section. *E.g.* HRS § 707–700 (defining terms used in HRS Chapter 707); HRS § 707–760 (defining terms used in HRS Chapter 707, Part VII); HRS § 708–800 (defining terms used in HRS Chapter 708); HRS § 708–850 (defining terms used in HRS Chapter 708, Part VI); HRS § 708–890 (defining terms used in HRS Chapter 708, Part IX); HRS § 708A–2 (defining terms used in HRS Chapter 708A); HRS § 710–1000 (defining terms used in HRS Chapter 710); HRS § 711–1100 (defining terms used in HRS Chapter 711); HRS § 712–1201 (defining terms used in HRS §§ 712–1202 to –1204); HRS § 712–1210 (defining terms used in HRS Chapter 712, Part II); HRS § 712–1220 (defining terms used in HRS Chapter 712, Part III); and HRS § 712–1240 (defining terms used in HRS Chapter 712, Part IV). Many of these statutory definitions, like the definition of the habitual offender phrase, are quite long. If the State is placed at risk

---

2. The *Mita* court noted that in *Wheeler*, it had contrasted the situation in *Wheeler* with that in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). *Mita*, 124 Hawai'i at 392, 245 P.3d at 465. In *Hamling*, the United States Supreme Court rejected the defendant's claim that the indictment was insufficient because the government used the term "obscene" in the indictment without alleging the component parts of the constitutional definition of obscenity. *Hamling*, 418 U.S. at 91, 117–19, 94 S.Ct. 2887. The United States Supreme Court had judicially defined obscenity to require the trier of fact to determine "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 102, 94 S.Ct. 2887 (ellipsis points in original). The *Hamling* court held that because

the word "obscene" was a legal term of art with a fixed meaning, the use of the term "obscene" in the indictment, without alleging its constitutional definition, was sufficient to adequately inform the defendants of the charges against them. *Id.* at 118–19, 94 S.Ct. 2887.

The *Mita* court explained that it "emphasized [in *Wheeler*] that *Hamling* was distinguishable from the circumstances in *Wheeler* because 'the term 'obscenity' itself provided a person of common understanding with *some notice* of the nature of the prohibited conduct.[']" *Mita*, 124 Hawai'i at 392, 245 P.3d at 465 (emphasis added). Clearly, there was no need for the supreme court to distinguish *Hamling* in this fashion if the failure to allege the additional details set forth in a statutorily- or judicially-defined term automatically rendered a charge deficient. In addition, the supreme court's basis for distinguishing *Hamling* indicate that a term's statutory or judicial definition need not be alleged as long as the term itself provides "some notice of the nature of the prohibited conduct."

of having a charge ruled insufficient whenever it fails to allege the statutory definition of an offense term, the result will be unduly long, complex, and prolix charges, which incorporate the statutory definition of every term defined by statute. Such a result would be contrary to the directive of HRPP Rule 7(d) and would detract from a defendant's ability to easily understand the charge.

Walker was represented by appointed counsel. Criminal defendants are entitled to the effective assistance of counsel, and in Hawai'i, indigent defendants who are charged with an offense punishable by a term of imprisonment have the right to appointed counsel. *State v. Dowler*, 80 Hawai'i 246, 249, 909 P.2d 574, 577 (App.1995). Although a citation to the offense statute will not *cure* a defective charge that omits an essential element, *see State v. Elliott*, 77 Hawai'i 309, 312, 884 P.2d 372, 375 (1994), HRS § 806–26 makes clear that where a charge includes the essential elements, the statutory definition of terms used in the charge are to be considered and applied in evaluating the sufficiency of the charge. Indeed, it is not unreasonable to expect that competent counsel or a defendant choosing to proceed pro se, who has notice of an essential element by virtue of a statutorily-defined term used in the charge, will consult the relevant statutory provisions to obtain a more complete understanding of the charged offense.

In my view, *Wheeler* is clearly distinguishable and does not control the decision in this case. Pursuant to *Mita* and HRS § 806–26, the habitual offender phrase gave Walker

adequate notice of the habitual offender element, and the State was not required to allege the statutory definition of that phrase for the charge to be sufficient.[3]

## D.

Walker's reliance on *State v. Domingues*, 106 Hawai'i 480, 107 P.3d 409 (2005), and *State v. Kekuewa*, 114 Hawai'i 411, 163 P.3d 1148 (2007), is misplaced. In *Domingues* and *Kekuewa*, the supreme court construed prior versions of the OVUII offense statute, HRS § 291E–61,[4] which contained a penalty provision (HRS § 291E–61(b)) that imposed enhanced penalties for defendants depending on the number of prior OVUII convictions they had within a specified time frame. Because of constitutional due process concerns relating to a defendant's ability to ascertain whether he or she was entitled to a jury trial, the court construed the penalty provision of the statute as being part of substantive offense. *Kekuewa*, 114 Hawai'i at 418–23, 163 P.3d at 1155–60. Based on this construction, the court concluded that the State was required to allege the penalty provision because it was an essential element of the offense. *Id.* The court reaffirmed this conclusion in *State v. Ruggiero*, 114 Hawai'i 227, 237–39, 160 P.3d 703, 713–15 (2007).

*Domingues*, *Kekuewa*, and *Ruggiero* support the unremarkable proposition that for a charge to be sufficient, the State is required to include in the charge those portions of the offense statute that identify the essential elements of the substantive offense. As *Mita* makes clear, these cases do not require the

---

**3.** I note that the same statutory definition of "operate" applicable to the OVUII offense in *Wheeler* applies to the Habitual OVUII offense charged against Walker. Like the defective OVUII charge in *Wheeler*, the Habitual OVUII charge against Walker did not allege that his conduct took place "upon a public way, street, road, or highway" (the "public road requirement"). *Wheeler*, 121 Hawai'i at 391–93, 219 P.3d at 1178–80. However unlike in *Wheeler*, Walker did not challenge the sufficiency of his Habitual OVUII charge on the ground that it failed to allege the public road requirement. Thus, we apply the liberal construction rule. *Id.* at 399–400, 219 P.3d at 1186–87. In Count 3, the State alleged that on or about the same date as the Habitual OVUII offense, Walker committed the offense of Consuming or Possessing Intoxicating Liquor While Operating a Motor Vehi-

cle, in that he did possess an open or partially empty bottle of intoxicating liquor "while operating a motor vehicle upon a public street, road, or highway." Reading Counts 1 and 3 together and applying the liberal construction rule, I conclude that the State sufficiently charged the public road requirement with respect to the Habitual OVUII offense. *See State v. Tominiko*, No. SCWC–29535, 2011 WL 4375245 at *7 (Hawai'i Aug. 26, 2011).

**4.** The supreme court construed HRS § 291E–61 (Supp.2001) in *Domingues* and HRS § 291E–61 (Supp.2002) in *Kekuewa*. The difference between the Supp.2001 and the Supp.2002 versions of HRS § 291E–61 was not material to the supreme court's analysis.

State to allege the statutory definition of terms used in the offense statute. Walker was charged with Habitual OVUII under a different statute than construed in *Domingues, Kekuewa,* and *Ruggiero.* With respect to the Habitual OVUII offense, there is no due process concern relating to the ascertainment of the entitlement to a jury trial that would necessitate construing the statutory definition of the habitual offender phrase as part of the substantive Habitual OVUII offense. Habitual OVUII is a felony to which the jury trial right clearly attaches. For the Habitual OVUII offense, it is the habitual offender phrase, and not its statutory definition, that describes the essential element for the offense. For these reasons, *Domingues, Kekuewa,* and *Ruggiero* are inapposite.

### II.

Walker's remaining arguments do not entitle him to relief. The Circuit Court specifically determined that "[e]ven without considering [Walker's] admission of drinking 8 or 9 beers and his performance on the HGN phase of the SFST, this Court finds that Defendant was under the influence of an intoxicant as he drove on a public street and was impaired beyond a reasonable doubt ..." The Circuit Court's ruling establishes that any error in failing to suppress Walker's statement and in admitting evidence of his performance on the HGN test was harmless beyond a reasonable doubt. This is because even without Walker's statement or the HGN evidence, the Circuit Court would have found Walker guilty of Habitual OVUII.

Walker's claim that there was insufficient evidence to support his Habitual OVUII conviction is without merit. Walker only disputes the sufficiency of the evidence regarding whether he was impaired. Without considering Walker's statement or the HGN evidence, there was sufficient evidence that Walker was "under the influence of alcohol in an amount sufficient to impair [his] normal mental faculties or ability to care for [himself] and guard against casualty." *See* HRS § 291E–61.5(a)(2)(A). This included evidence that: (1) Walker drove his vehicle in an unsafe manner; (2) Walker's eyes were red and glassy, there was a strong odor of an alcoholic beverage on his breath, and his speech was slightly slurred; (3) there was an open beer bottle on the center console of the truck which was "sweating," indicating that Walker had recently consumed alcohol before being stopped by Officer Hill; (4) Walker was unable to properly perform the walk-and-turn test; and (5) Walker refused to take the one-leg stand test, citing a physical impairment that he had not previously disclosed.

### CONCLUSION

For these reasons, I respectfully dissent.