**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-29659
24-APR-2012
09:07 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

SAMUEL WALKER, also known as Samuel Ahsan,
Petitioner/Defendant-Appellant.

NO. SCWC-29659

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 29659; CR. NO. 08-1-0586)

APRIL 24, 2012

ACOBA, DUFFY, AND MCKENNA, JJ.; WITH RECKTENWALD, C.J.,
CONCURRING SEPARATELY IN THE RESULT,
WITH WHOM NAKAYAMA, J., JOINS

<u>AMENDED OPINION OF THE COURT BY DUFFY, J.</u>

Petitioner/Defendant-Appellant Samuel Walker, also

known as Samuel Ahsan, (Walker) filed a timely application for a

writ of certiorari (Application), urging this court to review the Intermediate Court of Appeals' (ICA) October 18, 2011 judgment on appeal, which vacated the January 26, 2009 notice of entry of judgment and conviction and sentence (judgment) of the circuit court of the first circuit (circuit court),[1] and remanded the case with instructions to dismiss Count I without prejudice. The circuit court found Walker guilty of three offenses[2] including (Count I) Habitually Operating a Vehicle Under the Influence of an Intoxicant (HOVUII) in violation of Hawai'i Revised Statutes (HRS) §§ 291E-61.5(a)(1) and (a)(2)(A) (2007 & Supp. 2008).[3]

---

[1]    The Honorable Michael A. Town presided.

[2]    The circuit court also convicted Walker of (Count II) Operating a Vehicle After License and Privilege have been Suspended or Revoked for Operating a Vehicle Under the Influence of an Intoxicant in violation of HRS § 291E-62(a)(2) (2007) and (Count III) Consuming or Possessing Intoxicating Liquor While Operating Motor Vehicle in violation of HRS § 291-3.1(b) (2007). Walker's questions presented focus solely on his conviction of HOVUII under Count I; he does not challenge his convictions under Counts II or III.

[3]     HRS § 291E-61.5 (2007 & Supp. 2008) provided in relevant part:

(a)   A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:
(1)   The person is a habitual operator of a vehicle while under the influence of an intoxicant; and
(2)   The person operates or assumes actual physical control of a vehicle:
(A)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

      . . .

(b)   For the purposes of this section:
"Convicted three or more times for offenses of operating a vehicle under the influence" means that, at the time of the

continue...

Walker's Application presents the following questions:

---

[3]...continue
behavior for which the person is charged under this section, the person had three or more times within ten years of the instant offense:
(1) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for a violation of this section or section 291-4, 291-4.4, or 291-7 as those sections were in effect on December 31, 2001, or section 291E-61 or 707-702.5; [or]
(2) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for an offense that is comparable to this section or section 291-4, 291-4.4, or 291-7 as those sections were in effect on December 31, 2001, or section 291E-61 or 707-702.5;

. . .

that, at the time of the instant offense, had not been expunged by pardon, reversed, or set aside. All convictions that have been expunged by pardon, reversed, or set aside prior to the instant offense shall not be deemed prior convictions for the purposes of proving the person's status as a habitual operator of a vehicle while under the influence of an intoxicant.
A person has the status of a "habitual operator of a vehicle while under the influence of an intoxicant" if the person has been convicted three or more times within ten years of the instant offense, for offenses of operating a vehicle under the influence of an intoxicant.
(c) Habitually operating a vehicle while under the influence of an intoxicant is a class C felony.
(d) For a conviction under this section, the sentence shall be either:
(1) An indeterminate term of imprisonment of five years; or
(2) A term of probation of five years, with conditions to include:
(A) Mandatory revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years;
(B) Not less than ten days imprisonment, of which at least forty eight hours shall be served consecutively;
(C) Referral to a certified substance abuse counselor as provided in section 291E-61(d);
(D) A surcharge of $25 to be deposited into the neurotrauma special fund; and
(E) May be charged a surcharge of up to $50 to be deposited into the trauma system special fund if the court so orders.

3

1. Did the ICA gravely erred [sic] in ordering Count 1 of the Felony Information to be remanded for dismissal without prejudice insofar as Count 1 adequately alleges an offense under HRS §§ 291E-61(a)(1) and (b)(1) (2007), and thus, pursuant to State v. Kekuewa, 114 Hawai'i 411, 163 P.3d 1148 (2007), and State v. Ruggiero, 114 Hawai'i[] 227, 160 P.3d 703 (2007), the ICA must reverse the conviction in Court 1 if there was insufficient evidence to convict Defendant of HRS §§ 291E-61(a)(1) and (b)(1) (2007) or remand this case to the circuit court for entry of judgment of conviction and resentencing pursuant to HRS §§ 291E-61(a)(1) and (b)(1) if there was sufficient evidence to convict Defendant?

2. Did the ICA gravely erred [sic] in failing to analyze and suppress Mr. Walker's un-Mirandized statement concerning his alcohol consumption that was made in response to custodial interrogation as part of a sufficiency analysis?

3. Did the ICA gravely erred [sic] in failing to analyze and exclude the results of Mr. Walker's performance of the Horizontal Gaze Nystagmus ("HGN") test despite the State's failure to lay the proper foundation pursuant to State v. Toyomura, 80 Hawai'i 8, 27, 904 P.2d 893, 912 (1995), and State v. Ito, 90 Hawai['])i 225, 244, 978 P.2d 191, 210 (App. 1999), as part of a sufficiency analysis?

Notably, Walker's Application only challenges his conviction of Count I, HOVUII.

We accepted Walker's Application for the limited purpose of clarifying and reconciling this court's opinions in State v. Ruggiero, 114 Hawai'i 227, 160 P.3d 703 (2007), and State v. Kekuewa, 114 Hawai'i 411, 163 P.3d 1148 (2007), in light of State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009). Clarification of Ruggiero and Kekuewa in the context of Wheeler will ensure consistency among future OVUII cases. We hold that an appellate court's remand for entry of judgment of conviction and resentencing for a lesser-included offense must be based on a jurisdictionally valid lesser-included charge. Under this

4

holding, Walker's HOVUII charge did not adequately allege the lesser-included offense of Operating a Vehicle Under the Influence of an Intoxicant (OVUII) as a first offender pursuant to HRS §§ 291E-61(a)(1) and (b)(1) (2007)[4] because his charge failed to allege an essential element, specifically, the

---

[4]     HRS §§ 291E-61(a)(1) and (b)(1) (2007) provided:

(a)     A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
        (1)     While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

        . . .

(b)     A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation of suspension of sentence:
        (1)     Except as provided in [paragraph] (2), for the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E-4(a):
                (A)     A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable program deemed appropriate by the court;
                (B)     Ninety-day prompt suspension of license and privilege to operate a vehicle during the suspension period, or the court may impose, in lieu of the ninety-day prompt suspension of license, a minimum thirty-day prompt suspension of license with absolute prohibition from operating a vehicle and, for the remainder of the ninety-day period, a restriction on the license that allows the person to drive for limited work related purposes and to participate in substance abuse treatment programs;
                (C)     Any one or more of the following;
                        (i)     Seventy-two hours of community service work;
                        (ii)    Not less than forty-eight hours and not more than five days of imprisonment; or
                        (iii)   A fine not less than $150 but not more than $1,000; and
                (D)     A surcharge of $25 to be deposited into the neurotrauma special fund[.]

attendant circumstance that he operated a vehicle on a public road, way, street, or highway as mandated by <u>Wheeler</u>. Accordingly, we affirm the ICA's judgment and hold that the ICA did not err in vacating the circuit court's judgment and remanding Walker's case to the circuit court with instructions to dismiss Count I without prejudice.  We write separately only to clarify and reconcile <u>Ruggiero</u>, <u>Kekuewa</u>, and <u>Wheeler</u>.

## I.    BACKGROUND

### A.   April 17, 2008 Incident

The charges against Walker arose out of an incident that occurred on April 17, 2008 in the City and County of Honolulu, State of Hawaiʻi.  At about 11:40 p.m., while assisting at a traffic accident near the corner of Kilani Avenue and North Cane Street in Wahiawa, Honolulu Police Department (HPD) Officer Morgan Hill (Officer Hill) heard "a loud screeching of tires" and an accelerating engine sound come from Walker's vehicle.  Officer Hill observed Walker's vehicle accelerate at a high rate of speed and, based on his training and experience, believed Walker was driving at a higher rate than the twenty-five mile per hour posted speed limit.  "Everything indicated to [Officer Hill] that it was not a safe execution."  Based solely on his observation of

6

Walker's apparent speeding,[5] Officer Hill got into his vehicle and pursued Walker at an "extremely high rate of speed" in order to reach him. Officer Hill activated his blue light and Walker pulled over.

After stopping Walker's vehicle and notifying police dispatch of the traffic stop, location, and Walker's license plate number, Officer Hill approached Walker's vehicle from the driver's side. Walker produced a Hawai'i state ID.[6] Officer Hill observed that Walker's eyes were red and glassy and his speech was slurred.[7] Officer Hill also noted a strong odor of alcohol coming from Walker's breath when he spoke.[8] Officer Hill asked Walker if he had been drinking and Walker answered "[o]nly about eight or nine beers. I'm okay, and I live just right over there." Officer Hill testified that Walker's reported alcohol

---

[5] During cross-examination, Officer Hill conceded that apart from the speeding violation, he did not observe Walker breaking any other rules: "his headlights were on[,]" "he was not weaving[,]" "he was not swerving[,]" "he was not drifting in[,]" "he was driving in his own lane[,]" "he did not cross the center line[,]" "he did not strike anything[,]" "he did not almost strike anything[,]" and "he [did not] drive off the road[.]"

[6] Walker was unable to produce a valid drivers license. Walker's license was revoked from November 10, 2006 to November 9, 2008, which included the night of the instant offense, April 17, 2008.

[7] During cross-examination, Officer Hill conceded that there are many reasons a person's eyes may be red outside of alcohol consumption.

[8] During cross-examination, Officer Hill acknowledged that based on smell alone, one cannot determine how much alcohol has been consumed. Furthermore, it is possible for an individual to consume alcohol hours earlier and not be intoxicated, but still smell of alcohol.

7

consumption did not factor into his decision to arrest Walker. He stated, "I really didn't want to base my arrest on anything, other than how [Walker] was going to perform the field sobriety exercise.  At that point when I was able to determine whether I believed him to be impaired or not, then, I would make a judgment on whether or not to arrest, because anybody can say anything."

At this time, Officer Hill also noticed an open, "sweating" beer bottle located in the center console of Walker's vehicle.[9]  Based on the totality of this information, Officer Hill believed Walker could be impaired from alcohol consumption. Accordingly, Officer Hill asked Walker if he was willing to participate in a standardized field sobriety test (SFST) and Walker consented.[10]

At the time of the incident, Officer Hill had been employed by HPD for thirteen years and, during that time, he handled several hundred OVUII cases "either as the initial officer or[,] at the very least, as a participating officer of some sort."  As part of his training with HPD, Officer Hill was trained to conduct and evaluate SFSTs.  As part of the SFST

---

[9]     Officer Hill recovered the open beer bottle and submitted it as evidence for analysis.

[10]     Officer Hill testified during cross-examination: "[o]nce I had made my observations and decided that I had reasonable suspicion that there was a possibility [Walker] had been operating the vehicle under the influence, then, I asked him to step out for the SFST[.]"

education, Officer Hill received classroom and workshop training to administer and evaluate the Horizontal Gaze Nystagmus (HGN) test,[11] the "walk and turn" test, and the "one-leg-stand" test. Officer's Hill's SFST training was conducted in accordance with National Highway Traffic Safety Administration (NHTSA) standards.

After Walker consented to participate in the SFST, Officer Hill "asked him if he was wearing contacts, if he was on any medication, if he was epileptic, diabetic, had [an] artificial eye, fake leg, was under the care of a doctor or dentist at that time[,]" or "had any physical defect or speech impediments[.]" Walker indicated that he had no medical condition.[12] Officer Hill explained to Walker that his ability to follow instructions would be included in Officer Hill's evaluation of the SFST.

Officer Hill administered the HGN and "walk and turn" portions of the field sobriety exercise in accordance with his training and NHTSA standards. The HGN test revealed that Walker exhibited equal eye tracking and equal pupil size but lacked smooth pursuit in both eyes, in both directions. Also, Walker

---

[11] The HGN test measures involuntary movement (i.e. "jerkiness") in the eyes as related to alcohol consumption, motor skill, and muscle impairment.

[12] Later, however, Walker refused to participate in the one-leg-stand portion of the SFST claiming that he had a rod in his left thigh.

showed "heavy nystagmus" prior to forty-five degrees. During the walk and turn test, Walker misstepped, or had space in between his heel and toe, on two of the first nine steps and raised his arms during several steps.[13] Walker refused to take the one-leg-stand portion of the SFST.

B.    Walker's Circuit Court Proceedings

On April 21, 2008, the State charged Walker by Felony Information and Non-Felony Complaint (Felony Information):

> COUNT I:    On or about the 17th day of April, 2008, in the City and County of Honolulu, State of Hawaii, SAMUEL WALKER, also known as SAMUEL AHSAN, a habitual operator of a vehicle while under the influence of an intoxicant, did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to guard against casualty, thereby committing the offense of Habitually Operating a Vehicle Under the Influence of an Intoxicant, in violation of Sections 291E-61.5(a)(1) and 291E-61.5(a)(2)(A) of the Hawaii Revised Statutes.

Officer Hill confirmed with HPD dispatch that Walker, under his alias Samuel Ahsan, had three OVUII convictions within the preceding ten years. Attached to the Felony Information, HPD Officer Benjamin Moszkowicz submitted a declaration stating:

> A check with both the Criminal Justice Information System, as well as court records of the District Court of the First Circuit, State of Hawaii, revealed that on April 17, 2008, Walker had three (3) prior convictions within the State of Hawaii for Operating a Vehicle Under the Influence of an Intoxicant, and/or Driving Under the Influence of Intoxicating Liquor under HPD Report Numbers 06-408360, 03-515849[,] and 03-389761 and that these convictions occurred between April 17, 1998 and April 17, 2008.

---

[13]    On the first nine steps, Walker raised his arms on steps one, three, seven, and eight. On the second nine steps, Walker raised his arms on steps five, six, and seven.

During the circuit court proceedings, Walker filed a Motion to Suppress Evidence and Statements (Motion to Suppress) on May 27, 2008. Specifically, Walker moved to suppress his statement to Officer Hill that he consumed "eight or nine beers." Walker argued that Officer Hill obtained this statement in violation of his constitutional rights under article I, sections 5 and 10 of the Hawaiʻi Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

On August 12, 2008, the circuit court denied Walker's Motion to Suppress. The circuit court made the following findings of fact:

1. The Court finds Officer Morgan Hill's testimony credible.

2. Based on the credible testimony of Officer Morgan Hill, this court finds that [Walker] revved his vehicle's engine, caused his vehicle's tires to spin and screech, accelerated to a fast rate of speed in a residential area, and traveled at a speed well beyond the limit of 25 mph posted in that area.

3. When Officer Hill approached [Walker's] vehicle after stopping [Walker] for the observed violation of the basic speed rule and asked [Walker] for his driver's license and registration, Officer Hill noticed that [Walker] had red, glassy, bloodshot eyes, strong and distinct odor of an alcoholic type beverage coming from his breath[,] and a slight slur as [he] spoke.

4. At about the same time as Officer Hill asked [Walker] if he had been drinking[,] Officer [Hill] also observed an open beer container.

5. [Walker], while sitting in his car[,] answered to Officer Hill in response to a single question that he drank only eight or nine beers earlier, that he will be okay and that he lives just over here, whereas the entire interaction between [Walker] and Officer Hill from the time of the stop to the time of [Walker's] response lasted about 15 seconds.

11

Additionally, the circuit court entered the following conclusions of law:

> 1. Based on Officer Hill's observation of [Walker] revving his vehicle's engine, spinning and screeching tires[,] and acceleration [sic] to a high rate of speed, above a safe speed under the circumstances, Officer Hill had a reasonable suspicion to stop Defendant for violation of the basic speed rule under H.R.S. [§] 291C-101.
>
> 2. At the time [Officer Hill] approached [Walker's] vehicle and spoke to [Walker], [Walker] was not in custody under State v. Wyatt, 67 Haw. 293, 687 P.2d 544 (1984), and State v. Kuba, 68 Haw. 184, 706 P.2d 1305 (1985).
>
> 3. Consequently[,] because [Walker] was not in custody at the time a question was posed to him whether he was drinking, Miranda warnings did not have to be given to [Walker] prior to asking the question.
>
> 4. The Court finds that [Walker's] response that he only drank eight or nine beers earlier and that he will be okay, because he lives just over here was given freely, voluntarily[,] and has a character of spontaneity, and therefore this statement was not elicited in violation of [Walker's] right against self incrimination.

On October 15, 2008, Walker submitted a memorandum of law contending, inter alia, that Count I failed to allege an essential element of the State's accusations. Specifically,

> Count I of the Felony Information fails to allege the attendant circumstances of [HRS] section 291E-61.5 (2007), namely that [Walker] had three (3) prior convictions for [OVUII] within ten (10) years of the present offense. Count I's statement that [Walker] is "a habitual operator of a vehicle while under the influence of an intoxicant" is nothing more than a statutory reference. A reader must refer to the statute itself to determine the meaning of this phrase, and thus, it is no more useful than the statutory citation at the end of Count I. However, statutory references in the charging instrument do not cure the omission of essential elements. . . . Because the State failed to allege the attendant circumstances of [Walker's] prior convictions, the State has merely charged [Walker] with OVUII as a first offense pursuant to HRS § 291E-61(a)(1) (2007).

Walker waived his right to a jury trial. During Officer Hill's cross-examination, Walker's counsel presented

12

Officer Hill with an alleged NHTSA manual. Officer Hill testified that he did not own a NHTSA manual and could not testify to its contents in several respects. Based on this testimony, before sentencing on November 6, 2008, Walker submitted his trial memorandum in which he argued that the circuit court should disregard Officer Hill's testimony "regarding the administration and results of the [HGN] test performed on [Walker] because the evidence showed that Officer Hill was not qualified to conduct and grade the HGN test results and Officer Hill did not perform the HGN test properly in this case."

The circuit court ruled from the bench and found Walker guilty of, inter alia, Count I, habitually operating a vehicle under the influence of an intoxicant. Judgment of conviction and sentence was entered against Walker on January 26, 2009. The circuit court entered the following conclusions of law:

> 1. There is no defect in the charging instrument in this case. The State has alleged all the elements of the offense including the attendant circumstances in the complaint by specifying that [Walker] was "a habitual operator of a vehicle while under the influence of an intoxicant". [sic]
>
> 2. "Habitual" is only used in a habitual OVUII statute, and it clearly has a unique meaning in the Hawaii Penal Code. Hawaii Revised Statutes, §291-E 61.5 [sic] ("H.R.S."). The use of the words "habitual operator" under State v. Kekuewa, 114 Haw[aiʻi] 411, 418[,] [163 P.3d 1148, 1155] (2007) in the complaint in the instant case: (1) gives notice to [Walker] that he has a right to a jury trial and (2) gives notice to the Circuit Court that it has jurisdiction because the offense is a class C felony under HRS 291-E 61.5 [sic].

13

3.    The interaction between [Walker] and Officer Hill from the time of the stop to the time of [Walker's] response regarding drinking [eight] or [nine] beers was not a custodial interrogation under State v. Wyatt, 67 Haw. 293, 687 P.2d 544 (1984).

4.    Even without considering [Walker's] admission of drinking 8 or 9 beers and his performance on the HGN phase of the SFST, this Court finds that [Walker] was under the influence of an intoxicant as he drove on a public street and was impaired beyond a reasonable doubt under State v. Ferm, 94 Haw[ai'i] 17, 25, 7 P.3d 193, 202 (2000) and State v. Vliet, 91 Haw[ai'i] 288, 293-94, [983] P.2d[] 189, 194-95 (1999).

The circuit court sentenced Walker to a five-year indeterminate term of incarceration for Count I.  Walker appealed.

C.    ICA Appeal

As related to this Application, Walker argued on appeal to the ICA that the circuit court's judgment should be reversed or vacated because:

1.    The Felony Information charging [Walker] with Habitually Operating a Vehicle Under the Influence of an Intoxicant is defective in failing to allege attendant circumstances -- that [Walker] had three convictions for operating a vehicle under the influence of an intoxicant within ten years before the present offense;

2.    The circuit court reversibly erred by failing to suppress [Walker's] un-Mirandized statement concerning his alcohol consumption that was made in response to custodial interrogation, and this error was not harmless beyond a reasonable doubt;

3.    The circuit court reversibly erred by admitting and considering evidence of [Walker's] performance of the [HGN] procedure despite the [State's] failure to lay proper foundation for such testimony, and this error was not harmless beyond a reasonable doubt[.]

Walker primarily advanced the argument that the State's failure to allege the statutory definition of "habitual offender" in the Felony Information rendered his HOVUII charge deficient under

State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009).

In a published decision, the ICA majority[14] agreed that Count I of the Felony Information failed to allege an essential element, an attendant circumstance, of the charge of HOVUII; Chief Judge Nakamura dissented. State v. Walker, No. 29659, 2011 WL 4537771 (App. 2011).[15] The ICA majority vacated and remanded the case to the circuit court with instructions to dismiss Count I without prejudice. Id. at *12.

### 1. The ICA Majority Opinion

The ICA majority examined Walker's charge[16] and explained that "[t]he minimum requirements for a criminal charge

_____

[14]   Judges Fujise and Leonard comprised the ICA majority.

[15]   Pinpoint citations to State v. Walker, No. 29659, 2011 WL 4537771 (App. 2011) are based on the hard copy opinion attached to Walker's Application.

[16]   Because Walker first objected to the sufficiency of the HOVUII charge prior to the circuit court finding him guilty, the ICA did not apply the Motta/Wells liberal construction rule in evaluating the sufficiency of his charge. State v. Walker, No. 29659, 2011 WL 4537771 at *3 (App. 2011). Under the Motta/Wells rule,

> there is a "presumption of validity," [State v.] Sprattling, 99 Hawai'i [312,] 318, 55 P.3d [276,] 282 [(2002)], for charges challenged subsequent to a conviction. In those circumstances, this court will "not reverse a conviction based upon a defective indictment [or complaint] unless the defendant can show prejudice or that the indictment [or complaint] cannot within reason be construed to charge a crime." [State v.] Merino, 81 Hawai'i [198,] 212, 915 P.2d [672,] 686 [(1996)] (citation omitted).

State v. Wheeler, 121 Hawai'i 383, 399-400, 219 P.3d 1170, 1186-87 (2009) (some brackets in original). The ICA's analysis in Walker is consistent with this court's principle that the "liberal construction standard is limited to construing indictments[] when the issue is only raised after trial." State v. Motta, 66 Haw. 89, 94, 657 P.2d 1019, 1022 (1983) (emphasis in original) (footnote omitted).

15

are set by statute[]" in HRS § 806-34:

> In an indictment the offense may be charged either by name or by reference to the statute defining or making it punishable; and the transaction may be stated with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed, as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court has jurisdiction, and to give the accused reasonable notice of the facts.
>
> Averments which so charge the offense and the transaction shall be held to be sufficient.

Id. (quoting HRS § 806-34 (1993)).  In State v. Stan's Contracting, Inc., 111 Hawaiʻi 17, 31, 137 P.3d 331, 345 (2006), this court construed HRS § 806-34 as containing mandatory requirements for a charge.  Id.  The ICA majority's analysis explained that "the factual description of the transaction has a jurisdictional component and is in addition to the requirement of giving the defendant 'reasonable notice of the facts.'"  Walker, No. 29659, 2011 WL 4537771 at *6 (citing HRS § 806-34 (1993)).

Furthermore, the ICA majority also examined Hawaiʻi Rules of Penal Procedure (HRPP) Rule 7(d) and noted that the rule "reflects a similar distinction between the requirements for the description of the offense charged and the facts giving rise to the charge."  Id.  The majority explained:

> With respect to the identification of the charge, HRPP Rule 7(d) requires that "[t]he charge shall state for each count the official or customary citation of the statute, rule, regulation[,] or other provision of law[.]"  With respect to the description of the transaction, HRPP Rule 7(d) requires that "[t]he charge shall be a plain, concise[,] and definite statement of the essential facts constituting the offense charged."

Id.

16

Beyond HRS § 806-34 and HRPP Rule 7(d), the ICA majority acknowledged that in some circumstances, "compliance with the requirements for identification of the charge . . . does not necessarily satisfy the requirements for the allegation of the transaction." Id. at \*7. In such a situation, a mere "citation to the statute would not cure the failure to allege an element of an offense." Id. For example, in Wheeler, "[t]he use of the phrase 'operate' [in the charge] did not provide adequate notice to [the defendant] that the State was required to prove that [the defendant's] operation of the vehicle occurred on a public way, street, road, or highway." Id. (quoting Wheeler, 121 Hawaiʻi at 395, 219 P.3d at 1182). The ICA analogized Walker to Wheeler: "[j]ust as the word 'operate' does not suggest operation on a public road, 'habitual operator' does not convey the narrow definition that the person charged had three prior convictions within the previous ten years[]" as required for a conviction under HRS §§ 291E-61.5(a)(1) and (a)(2)(A). Id. at \*8.

State v. Mita, 124 Hawaiʻi 385, 245 P.3d 458 (2010), a case involving an animal nuisance charge pursuant to the Revised Ordinances of Honolulu (ROH), also provided guidance to the ICA majority's opinion. Id. at \*9-10. Two significant factors distinguished Mita from Wheeler. First, in Mita, the definition

17

of "animal nuisance" as used in the ROH did not create an additional element of the offense of animal nuisance as the definition of "operate" created an additional element of the offense of OVUII in Wheeler. See id. at \*10 (citing Mita, 124 Hawai'i at 391, 245 P.3d at 464). Second, the definition of "animal nuisance" as used in the ROH is consistent with the commonly understood meaning of the term unlike the definition of "operate" in Wheeler that carried a narrow, statutory definition. See id. (citing Mita, 124 Hawai'i at 391, 245 P.3d at 464). Ultimately, Mita's charge "sufficiently alleged all of the essential elements of the offense of animal nuisance[]" by tracking the language of the ROH. Id. (quoting Mita, 124 Hawai'i at 391, 245 P.3d at 464).

Following Wheeler and Mita, the ICA majority concluded that "the charge of HOVUII is essentially a recidivist offense and virtually the only difference between it and the offense of [OVUII] under HRS § 291E-61 is the number of previous convictions required for an HOVUII conviction." Id. Furthermore, "[t]he term 'habitual,' or even 'habitual operator,' does not convey the specificity of the term for HOVUII purposes." Id. at \*10-11. Therefore, the ICA majority determined that the terms "habitual" and "habitual operator" do not qualify as terms that may be used in a criminal charge under their commonly understood definitions

18

as allowed by HRS § 806-31 (1993).[17]  Id. at *9.

> Proof beyond a reasonable doubt that Walker was a "habitual operator of a vehicle while under the influence of an intoxicant" as that phrase might be understood given the words usual meaning (see HRS § 1-14 (2009)),[18] would not necessarily result in a conviction.  A conviction would only lie upon proof that Walker "has been convicted three or more times within ten years of the instant offense, for offenses of operating a vehicle under the influence of an intoxicant" as prescribed in HRS § 291E-61.5(b).  Thus, the three prior convictions are attendant circumstance elements of the offense. See Ruggiero, 114 Hawaiʻi at 239, 160 P.3d at 715.

Id. at *12.  For the ICA majority, "[s]ince proof of each element of the offense is required for a conviction (HRS § 701-114(1)(a)),[19] the proof of three or more convictions within the previous ten years is an element of the offense and therefore should have been included in the charge."  Id.  Accordingly, based on this analysis alone, the ICA majority vacated the circuit court's judgment and remanded the case with instructions to the circuit court to dismiss Count I without prejudice.  Id. The ICA majority's opinion is silent as to Walker's other points

---

[17]    HRS § 806-31 (1993) provides:

No indictment or bill of particulars is invalid or insufficient for the reason merely that it alleges indirectly and by inference instead of directly any matters, facts, or circumstances connected with or constituting the offense, provided that the nature and cause of the accusation can be understood by a person of common understanding.

[18]    HRS § 1-14 (2009) provides that "[t]he words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning."

[19]    HRS § 701-114(1)(a) provides: "(1) Except as otherwise provided in section 701-115, no person may be convicted of an offense unless the following are proved beyond a reasonable doubt: (a) Each element of the offense[.]"

of error presented in his opening brief.  Id. at \*1-12.

### 2.  Chief Judge Nakamura's Dissent

Chief Judge Nakamura dissented; in his view, Count I of the Felony Information adequately apprised Walker of the charges he faced so as to adequately prepare his defense.  State v. Walker, No. 29659, 2011 WL 4537771 at \*1 (App. 2011) (Nakamura, C.J., dissenting).[20]  In the charge at issue, Chief Judge Nakamura believed that "[t]he habitual offender phrase [(i.e., "a habitual operator of a vehicle while under the influence of an intoxicant")] tracked the language of the statute proscribing the offense and is statutorily defined to mean a person with three or more prior OVUII convictions within ten years of the charged offense."  Id. (Nakamura, C.J., dissenting).  The dissent explained:

> As used in the context of the criminal offender, the term "habitual" is commonly understood to mean a recidivist, a person with multiple convictions for the same offense.  In my view, the Habitual OVUII charge gave Walker, who was represented by counsel, fair notice of the attendant circumstances element regarding his habitual offender status . . . and adequately apprised him of what he must be prepared to meet.

Id. at \*1-2 (Nakamura, C.J., dissenting).

Chief Judge Nakamura also examined State v. Mita and noted:

---

[20]    Pinpoint citations to State v. Walker, No. 29659, 2011 WL 4537771 (App. 2011) (Nakamura, C.J., dissenting) are based on the hard copy opinion attached to Walker's Application.  In hard copy format, Chief Judge Nakamura's dissent pagination restarts at \*1.

> Wheeler does not require that the State provide statutory definitions in every charge which tracks the language of a statute that includes terms defined elsewhere in the code. Requiring the State to do so would render charges unduly complex, in contravention of the policy reflected in HRPP Rule 7(d) that "[t]he charge shall be a plain, concise[,] and definite statement of the essential facts constituting the offense charged." Rather, as this court concluded in Wheeler, the State need only allege the statutory definition of a term when it creates an additional essential element of the offense, and the term itself does not provide a person of common understanding with fair notice of that element.

Id. at *9 (Nakamura, C.J., dissenting) (citation omitted) (quoting Mita, 124 Hawai'i at 391-92, 245 P.3d at 464-65). Generally, "where the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient." Id. at *7 (Nakamura, C.J., dissenting) (citing Wheeler, 121 Hawai'i at 393, 219 P.3d at 1180). According to Chief Judge Nakamura,

> [u]nlike in Wheeler, the statutory definition of the habitual offender phrase [in Walker's case] does not create an additional essential element for the Habitual OVUII offense. The habitual offender element is already embodied in the habitual offender phrase which is part of the offense statute. The statutory definition of the habitual offender phrase simply elaborates on the meaning of that phrase with details that are consistent with the phrase's commonly understood meaning.

Id. at *9 (Nakamura, C.J., dissenting).

Furthermore, in the dissent's view, neither of Walker's additional arguments (i.e., that the circuit court erred by declining to suppress his statement to Officer Hill that he consumed eight or nine beers and that the circuit court erred by

21

admitting evidence of his HGN test performance) entitled him to relief.  Id. at *2 (Nakamura, C.J., dissenting).  For these reasons, inter alia, Chief Judge Nakamura would have affirmed Walker's HOVUII conviction.  Id. (Nakamura, C.J., dissenting).

D.   Application for Writ of Certiorari

Walker filed the instant, timely Application on January 17, 2012.  The State filed a response on January 27, 2012.

## II.   STANDARDS OF REVIEW

A.   Sufficiency of a Charge

"Whether a charge sets forth all the essential elements of a charged offense is a question of law, which [this court] review[s] under the de novo, or right/wrong, standard."  State v. Wheeler, 121 Hawaiʻi at 390, 219 P.3d at 1177 (citation, internal quotation marks, ellipses, and brackets omitted).

B.   Motion to Suppress Evidence

"A trial court's ruling on a motion to suppress evidence is reviewed de novo" under the right/wrong standard.  State v. Spillner, 116 Hawaiʻi 351, 357, 173 P.3d 498, 504 (2007) (quoting State v. Kaleohano, 99 Hawaiʻi 370, 375, 56 P.3d 138, 143 (2002)).

## III.   DISCUSSION

Notably, Walker does not challenge the ICA majority's determination that the language of Count I is defective for

22

failing to allege an essential element, the attendant circumstance that Walker was convicted three or more times within ten years of OVUII, as required for a conviction of HOVUII under HRS §§ 291E-61.5(a)(1) and (a)(2)(A). Rather, Walker contends that the ICA improperly remanded his case to the circuit court with instructions to dismiss Count I without prejudice. Walker first argues that there was insufficient evidence to convict him of HRS §§ 291E-61(a) and (b)(1), and that the circuit court's judgment should be reversed. In the alternative, Walker argues that if there was sufficient evidence to convict him, "the circuit court judgment pursuant to Count [I] . . . must be vacated and this case remanded to the circuit court for entry of judgment of conviction and resentencing pursuant to HRS §§ 291E-61(a) and (b)(1)."

A.  The ICA did not err by vacating the circuit court's judgment and remanding the case with instructions to the circuit court to dismiss Count I without prejudice.

In support of his argument that the ICA was required to remand his case to the circuit court for entry of judgment of conviction and sentencing pursuant to HRS §§ 291E-61(a)(1) and (b)(1), Walker asserts that his case is "on all fours" with State v. Ruggiero, 114 Hawaiʻi 227, 160 P.3d 703 (2007) and State v. Kekuewa, 114 Hawaiʻi 411, 163 P.3d 1148 (2007). While Walker correctly characterizes Ruggiero and Kekuewa in his Application,

23

his argument fails to account for more recent developments in OVUII case law. Specifically, under this court's decision in Wheeler, Walker's HOVUII charge did not adequately allege the lesser-included offense of OVUII as a first offender pursuant to HRS §§ 291E-61(a)(1) and (b)(1). As such, it would be improper to remand this case for entry of judgment of conviction and sentencing based upon a deficient lesser-included charge. Accordingly, the ICA did not err by vacating the circuit court's judgment and remanding the case with instructions to the circuit court to dismiss Count I without prejudice.

### 1. **State v. Ruggiero Analysis**

Walker analogizes his case to the remanding and resentencing principles utilized in Ruggiero. On March 10 2004, Ruggiero was arrested for OVUII.[21] Ruggiero, 114 Hawaiʻi at 229, 160 P.3d at 705. The State charged him by complaint on April 19, 2004, in relevant part:

> [O]n or about the 10th day of March, 2004, in the Division of Wailuku, County of Maui, State of Hawaiʻi, ADAM M. RUGGIERO did operate or assume actual physical control of a vehicle while under the influence of an intoxicant meaning that he was under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant in violation of Section 291E-61 of the Hawaiʻi Revised Statutes.

---

[21] Ruggiero classifies the March 10, 2004 arrest and subsequent charge and conviction as a "DUI." For consistency purposes, this memorandum uses the term "OVUII" as specified by statute.

24

Id. at 229 n.3, 160 P.3d at 705 n.3 (capitalization in original, brackets omitted).  At that time, Ruggiero's appeal from a January 29, 2003 conviction for OVUII in violation of HRS § 291E-61(a)(1) (Supp. 2002) was pending before this court.  Id. at 229, 160 P.3d at 705.  On March 19, 2004, nine days after his arrest, this court reversed his January 29, 2003 conviction on the grounds that the State failed to prove an essential element of the offense.  Id.

The trial court convicted Ruggiero of the March 10, 2004 OVUII charge and "then proceeded to the sentencing phase of the trial, whereupon the [State] moved for an enhanced sentence based on the prior January 29, 2003 conviction."  Id. at 230, 160 P.3d at 706.  The trial court found that this was Ruggiero's second offense within a five year period and sentenced him, "as a second-time offender, to fines, fourteen days in jail, and a one-year license suspension."  Id. at 231, 160 P.3d at 707.

Ruggiero appealed "to reduce his sentence to that of a first-time offender."  Id. at 240, 160 P.3d 716.  He conceded that he was subject to sentencing as a first-time offender under HRS § 291E-61(b)(1).  Id.  This court reasoned:

> on its face, the complaint can reasonably be construed to charge the crime of [OVUII] as a first offense, in violation of HRS § 291E-61(a) and (b)(1).  It plainly states the elements set forth in HRS § 291E-61(a) ("operates or assumes actual physical control of a vehicle") and -61(a)(1) ("[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal

> mental faculties or ability to care for the person and guard
> against casualty"). While the complaint is silent as to the lack
> of prior [OVUII] convictions, given the unique nature of the
> element -- the presence of an empty set, that is, the absence of
> any prior convictions -- silence with respect to prior violations
> can only betoken that their absence, <u>i.e.</u>, the import of HRS §
> 291E-61(b)(1), is implicit in the charge.

<u>Id.</u> (internal citations and footnotes omitted; some brackets in

original). "Inasmuch as . . . the [trial] court made the

appropriate findings and conclusions to convict Ruggiero of

[OVUII] as a first time offender," this court remanded the case

to the trial court "for entry of judgment of conviction of that

offense." <u>Id.</u> at 241, 160 P.3d at 717 (citation omitted).

### 2. **State v. Kekuewa Analysis**

Walker also analogizes his case to the remanding and

resentencing principles employed in <u>Kekuewa</u>. In October 2004,

Kekuewa was arraigned and charged, in relevant part:

> [O]n or about the 15th day of April 2004, in the City and County
> of Honolulu, State of Hawaii, Island of Oahu, you did operate or
> assume actual physical control of a vehicle while under the
> influence of alcohol in an amount sufficient to impair your normal
> mental faculties or the ability to care for yourself and guard
> against casualty thereby violating Section 291E-61 of the Hawaii
> Revised Statutes[22] <u>for your second offense</u>.

<u>Kekuewa</u>, 114 Hawaiʻi at 415, 163 P.3d at 1152 (emphasis in

---

22      For reference purposes, both Kekuewa and Ruggiero, as described
above, were charged with violating HRS § 291E-61 (Supp. 2004). The
legislature first created HRS § 291E-61.5 during the 2003 legislative section.
This new subsection removed sentencing "for an offense that occurs within ten
years of three or more prior convictions" of OVUII from HRS § 291E-61(b)(4)
(Supp. 2002) and created the new offense of "habitually operating a vehicle
under the influence of an intoxicant." HRS § 291E-61.5 became effective on
January 1, 2004. HRS § 291E-61.5 (Supp. 2003). Neither Kekuewa nor
Ruggiero's actions qualified for a charge of HOVUII under HRS § 291E-61.5
(2004).

original).  At the end of the state's case-in-chief, the trial court admitted a certified court abstract and court calendar for the purpose of proving Kekuewa's prior OVUII convictions within the previous five years.  State v. Kekuewa, 112 Hawai'i 269, 272-73, 145 P.3d 812, 815-16 (App. 2006).  The trial court found Kekuewa guilty as charged.  Kekuewa, 114 Hawai'i at 415, 163 P.3d at 1152.

On appeal, the ICA reversed Kekuewa's conviction and held that his charge was deficient because it failed to allege the attendant circumstance that Kekuewa's prior convictions occurred within five years of the offense charged.  Kekuewa, 112 Hawai'i at 277, 145 P.3d at 820.  The State filed an application for writ of certiorari, contending, inter alia, that "the ICA erred by reversing Kekuewa's conviction rather than remanding the matter for resentencing under HRS § 291E-61(b)(1)."  Kekuewa, 114 Hawai'i at 414, 163 P.3d at 1151.  This court affirmed the ICA's determination that "[t]he five-year time period omitted from the oral charge was a critical part of the HRS 291E-61(b)(2) attendant circumstance, one with especial resonance in this case in light of Defendant's several prior [OVUII] convictions."  Id. at 416, 163 P.3d at 1153.  Ultimately, the absence of the five-year time period from the State's oral charge rendered it defective.  Id.

This court, however, agreed with the State that the ICA improperly remanded Kekuewa's case to the trial court. Id. at 423, 163 P.3d at 1160. Instead of simply remanding for resentencing as a first offender under HRS § 291E-61(b)(1) (Supp. 2004), the ICA should have remanded the matter for entry of judgment of conviction of OVUII pursuant to HRS §§ 291E-61(a) and (b)(1) (Supp. 2004) and resentencing in accordance therewith. Id. This court explained:

> a defect in a complaint is not one of mere form, which is waivable, nor simply one of notice, which may be deemed harmless if a defendant was actually aware of the nature of the accusations against him or her, but rather, is one of substantive subject matter jurisdiction, "which may not be waived or dispensed with," see [State v.] Jendrusch, 58 Haw. [279,] 281, 567 P.2d [1242,] 1244 [(1977)], and that is per se prejudicial, see [State v.] Motta, 66 Haw. [89,] 91, 657 P.2d [1019,] 1020 [(1983)][.] Our case law further supports the proposition that an appellate court may nevertheless remand for entry of judgment of conviction and resentencing as to any offense adequately set forth in the accusation (i.e., the complaint, indictment, oral charge, or information).

Id. at 424, 163 P.3d at 1161 (emphases added, some internal citations omitted, some brackets in original). By analogizing Kekuewa to State v. Elliott, 77 Hawaiʻi 309, 884 P.2d 372 (1994), this court concluded that Kekuewa's

> charge contained one factual accusation that could have supported two separate offenses. . . . [T]he prosecution's oral charge . . . failed to adequately set forth the essential elements of the offense described by HRS §§ 291E-61(a) and (b)(2) (Supp. 2004). Nevertheless, absent the phrase "for your second offense," the prosecution's oral charge set forth the essential elements of the included offense described by HRS §§ 291E-61(a) and (b)(1) (Supp. 2004).

Id. at 425-26, 163 P.3d at 1162-63 (generally citing Ruggiero,

28

114 Hawaiʻi at 240, 160 P.3d at 716).

> 3. **The ICA properly remanded Walker's case to the circuit court.**

Based on Ruggiero and Kekuewa, Walker contends that this court should similarly remand his case for entry of judgment of conviction and resentencing under HRS §§ 291E-61(a)(1) and (b)(1) (2007). Walker's argument that his original charge adequately alleged the lesser-included offense of HRS §§ 291E-61(a)(1) and (b)(1) is flawed in two respects. First, Walker's charge is distinguishable from the charges and issues presented in Ruggiero and Kekuewa in two notable ways. Second, Walker's argument fails to account for recent changes in Hawaii's OVUII case law.

> i. **Walker is distinguishable from both Ruggiero and Kekuewa.**

The State correctly maintains that Walker's case is distinguishable from both Ruggiero and Kekuewa in two notable ways. First, "in Ruggiero, the evidence in support of the charged offense was insufficient, for the prosecution failed to adduce proof of a prior [OVUII] conviction in its case-in-chief as . . . required[.]" Second, "[i]n Kekuewa, it was the prosecution who asked this [c]ourt to remand for an entry of judgment of conviction as to the first [OVUII] offense if the court found that the conviction of the greater offense could not

29

stand." In both cases, this court exercised its discretion to remand to the trial court for entry of judgment of conviction as to a lesser-included offense. Significantly, and as the State's response to Walker's Application correctly noted, the issues presented in Ruggiero and Kekuewa are distinguishable from those raised in the present case:

> Here, the [State] did not ask for an entry of judgment of conviction as to any lesser-includ[ed] offense, nor was there insufficient evidence adduced with respect to the charged offense. As to the sufficiency of the evidence in support of the habitual OVUII charge, the [State] proved that [Walker] was a habitual offender, who operated a vehicle while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty . . . . HRS §§ 291E-61.5(a)(1) and (a)(2)(A).

Because Walker is materially distinguishable from Ruggiero and Kekuewa, the ICA properly remanded the case to the circuit court.

### ii. Walker's argument fails to account for Wheeler's contribution to Hawaii's OVUII case law.

Two primary yet distinct functions stem from a criminal charge. First, a charge must sufficiently allege an offense in order to properly confer jurisdiction upon the presiding court.

> The failure sufficiently to allege the essential elements of an offense in an oral charge, complaint, or indictment constitutes a denial of liberty without due process of law, which results from the failure to invoke the subject matter jurisdiction of the court. In other words, an oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity. See [State v.] Israel, 78 Hawaiʻi [66,] 73, 890 P.2d [303,] 310 (quoting Elliott, 77 Hawaiʻi at 311, 884 P.2d at 374 (quoting Jendrusch, 58 Haw. at 281, 567 P.2d at 1244)); Elliott, 77 Hawaiʻi at 312, 884 P.2d at 375 ("the omission of an essential element of the crime charged is a defect in substance rather than form" (quoting Jendrusch, 58 Haw. at 281, 567 P.2d at 1244)); Territory v. Koa Gora, 37 Haw. 1, 6 (1944) (failure to state an offense is a "jurisdictional point"); Territory v. Goto, 27 Haw. 65, 102 (1923) (Peters, C.J., concurring) ("[f]ailure of an

> indictment[,] [complaint, or oral charge] to state facts
> sufficient to constitute an offense against the law is
> jurisdictional[;] . . . an indictment[,] [complaint, or oral
> charge] . . . is essential to the court's jurisdiction," (brackets
> added)).

State v. Sprattling, 99 Hawaiʻi 312, 327, 55 P.3d 276, 291 (2002); see HRS § 806-34 (1993) (explaining that, in a criminal charge, "the transaction may be stated with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed," which serves "to show that the court has jurisdiction[] and to give the accused reasonable notice of the facts.").

Second, a criminal charge must inform a defendant of the "nature and cause of the accusation" against him or her pursuant to the Sixth Amendment to the United States Constitution and article I, section 14 of the Hawaiʻi Constitution. Mita, 124 Hawaiʻi at 390, 245 P.3d at 463. A charge that fails to satisfy both of these prongs is fundamentally flawed and strips the court of subject matter jurisdiction. "[A]n appellate court has . . . an independent obligation to ensure jurisdiction over each case and to dismiss the appeal sua sponte if a jurisdictional defect exists." State v. Graybeard, 93 Hawaiʻi 513, 516, 6 P.3d 385, 388 (App. 2000) (citing Bacon v. Karlin, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986)).

31

The question arises in the instant Application: because Walker's original HOVUII charge was deficient for failing to allege an attendant circumstance, would a lesser-included charge of OVUII as a first offender sufficiently (1) confer jurisdiction to the circuit court and (2) apprise Walker of the charges he must be prepared to meet?  Under Ruggiero and Kekuewa, remanding for entry of judgment of conviction and resentencing in Walker under HRS §§ 291E-61(a)(1) and (b)(1) would only be proper if the original complaint could reasonably be construed to charge OVUII as a first offense under that statute.  See Ruggiero, 114 Hawai'i at 240, 163 P.3d 716.  Walker's charge cannot reasonably be construed to charge the lesser-included offense of OVUII as a first offender under HRS §§ 291E-61(a)(1) and (b)(1) because such charging language would fail to allege that Walker "operated his vehicle upon a public way, street, road, or highway" as required by Wheeler, explained below.[23]  121 Hawai'i 383, 219 P.3d 1170.

On March 18, 2008, the State orally charged Wheeler with OVUII in violation of HRS § 291E-61(a)(1) (2007):[24]

> [O]n or about May 31, 2007, in the City and County of Honolulu, State of Hawaii, you did operate or assume actual physical control of a motor vehicle while under the influence of alcohol in amounts sufficient to impair your normal mental faculties and your ability

---

[23]  This court issued its decision in Wheeler in 2009, subsequent to Ruggiero and Kekuewa.

[24]  HRS 2007 is the same codification of the OVUII statute that Walker asks this court to consider.

32

> to care for yourself and guard against casualty, and thereby committing [sic] the offense of Operating a Vehicle Under the Influence of Intoxicants in violation of 291E-61(a)(1) of the Hawaii Revised Statutes.
>
> This being your first offense without any prior convictions for either 291E-61 and/or 291E . . . in the last five years. . . .

Id. at 386-87, 219 P.3d at 1173-74. Upon accepting certiorari, this court determined that Wheeler's charge was deficient for failing to allege an attendant circumstance of OVUII under HRS § 291E-61 (2007), namely operating a vehicle upon a public way, street, road, or highway. Id. at 393, 219 P.3d at 1180.

After reaching its conclusion, Wheeler clarified its consistency with Ruggiero and Kekuewa and declined to overrule those cases, noting that Ruggiero and Kekuewa presented different issues for the court, specifically, "whether a charge that failed to adequately allege that the defendant had a prior OVUII conviction within the past five years was nevertheless sufficient to charge a first-offense OVUII." Id. at 399, 219 P.3d at 1186. In those cases, "[n]either defendant raised the issue of whether the proscribed conduct must take place 'upon a public way, street, road, or highway' and, if so, whether it had been adequately alleged in the charge." Id. Accordingly, this court declined to address that issue in Ruggiero and Kekuewa.[25] Id.

---

[25] Additionally, Wheeler distinguished itself from Ruggiero and Kekuewa regarding the application of the Motta/Wells liberal construction rule:

continue...

33

Walker's Application, however, requires us to clarify Ruggiero and Kekuewa in the context of Wheeler.  The current essential elements that the State must include in an OVUII charge differ from those required in 2007 at the time of the Ruggiero and Kekuewa decisions.  Again, post-Wheeler, OVUII charges must now allege the attendant circumstance that the defendant operated a vehicle "on a public way, street, road, or highway."  Id. at 393, 219 P.3d at 1180.

Notably, Walker only contested the sufficiency of his charge on the basis that it failed to allege the attendant circumstance of his prior convictions within the previous ten years.  Walker did not contest the sufficiency of his complaint on the grounds that it failed to allege the attendant

---

[25]...continue
> Ruggiero and Kekuewa are factually distinguishable from the circumstances of [Wheeler]. Unlike Wheeler, neither of those defendants made a timely objection to the sufficiency of the OVUII charge in the trial court. Ruggiero never challenged the sufficiency of the complaint, including on appeal, and, according to the plurality, even conceded that he was subject to sentencing as a first-time offender.  Although Kekuewa challenged the sufficiency of the prosecution's charge on appeal, he did so only with regard to whether it adequately alleged his prior offense. In contrast, Wheeler immediately objected to the sufficiency of the oral charge, prior to the commencement of trial.

Wheeler, 121 Hawai'i at 399, 219 P.3d at 1186 (internal citations omitted). As in Wheeler, Walker challenged the sufficiency of his charge before the circuit court entered judgment.  Accordingly, in both Wheeler and Walker, the appellate courts correctly declined to engage in a "Motta/Wells post-conviction liberal construction rule" (meaning that charges challenged for the first time on appeal are liberally construed) as they did in Ruggiero and Kekuewa.  Wheeler, 121 Hawai'i at 399, 219 P.3d at 1186.  The Motta/Wells "rule does not apply when reviewing timely motions challenging the sufficiency of an indictment."  Id. at 400, 219 P.3d at 1187.

circumstance that he operated a vehicle on a public road, way, street, or highway under Wheeler.  In State v. Tominiko, the State charged the defendant, in part, with OVUII under HRS §§ 291E-61(a)(1) and/or (a)(3) (Supp. 2009) and Driving Without Motor Vehicle Insurance under HRS § 431:10C-104(a) (2005).  126 Hawaiʻi 68, 71-72, 266 P.3d at 1125-26 (2011).  "The Driving Without Motor Vehicle Insurance charge contained the allegation that the conduct occurred on a public roadway, but the OVUII charge did not."  Id. at 70, 266 P.3d at 1124.  At trial, the court dismissed the charge of Driving Without Motor Vehicle Insurance.  "Tominiko did not object to the charge or move to dismiss it at any point during the district court's proceeding."  Id. at 72, 266 P.3d at 1126.  Accordingly, the liberal construction standard applied to this court's review of Tominiko's OVUII charge on appeal.  See id. at 76, 266 P.3d at 1130.  "Under the liberal construction standard, when a party raises an objection to the indictment for the first time on appeal, the indictment is liberally construed."  Id. (citing State v. Motta, 66 Haw. 89, 90, 657 P.2d 1019, 1019 (1983)).  By applying the liberal construction standard in Tominiko, we held that an OVUII charge, which did not allege the public road requirement, was sufficient.  Id. at 76-77, 266 at P.3d at 1130-31.  We explained that "Count 3 alleged that Tominiko 'did

operate or use a motor vehicle upon a public street, road, or highway of the State of Hawaii. . . .'  Under the liberal construction standard, two counts can be read together."  Id. at 76, 266 P.3d at 1130 (citing State v. Elliot, 77 Hawaiʻi 309, 312, 884 P.2d 372, 375 (1994); State v. Sprattling, 99 Hawaiʻi 312, 319, 55 P.3d 276, 283 (2002)).

Walker is distinct from Tominiko.  Here, Walker challenged the sufficiency of his HOVUII charge at the circuit court on the ground that it failed to allege an essential element of the offense, namely that Walker had three prior OVUII convictions within ten years of the present offense.  While Walker did not challenge his charge on the basis that it failed to define the term "operate," he nevertheless objected to the sufficiency of his charge at trial, unlike Tominiko.  Walker is more similar to Wheeler, in which the defendant generally moved to dismiss on the ground that the charge failed to state an offense without specifying which element of the offense was deficient.  Wheeler, 121 Hawaiʻi at 387, 219 P.3d at 1174.  This court noted, "because Wheeler timely objected to the oral charge in the district court, the Motta/Wells [liberal construction] analysis [was] not applicable[.]"  Id. at 400, 219 P.3d at 1187.  Therefore, Wheeler's general objection was sufficient to prompt this court's rejection of the liberal construction standard in

that case.  Similarly, Walker's objection to the charge at the circuit court is sufficient to support this court's rejection of the liberal construction standard here.

Furthermore, appellate courts have an affirmative, independent duty to "ensure jurisdiction over each case and to dismiss the appeal <u>sua</u> <u>sponte</u> if a jurisdictional defect exists." <u>Graybeard</u>, 93 Hawai'i at 516, 6 P.3d at 388.  It follows that if an appellate court remands a case for entry of conviction of judgment and resentencing, it must do so based on a jurisdictionally valid charge.  Therefore, <u>Wheeler</u>'s requirement that the charge allege the attendant circumstance that the defendant operated a vehicle on a public way, street, road, or highway applies to the instant case.  Both HRS § 291E-61(a) (2007) and HRS § 291E-61.5(a)(2) (2007) require that a "person operates or assumes actual physical control of a vehicle" in order to sustain a conviction.  This court explained that the definition of "operate" under HRS § 291E-1 (2007) (<u>i.e.</u>, "to drive or assume actual physical control of a vehicle upon a public way, street, road, or highway . . .") is an essential element -- an attendant circumstance -- of the crime of OVUII. <u>Wheeler</u>, 121 Hawai'i at 393, 219 P.3d at 1180.  Thus, just as Wheeler's charge under HRS § 291E-61(a) (2007) was deficient for failing to allege an attendant circumstance, so too would an

37

alternative reading of Walker's HOVUII charge (without the "habitual" language) be deficient for failing to allege the same attendant circumstance.

Indeed, a revised version of Walker's charge without the "habitual" language reads:

> On or about the 17th day of April, 2008, in the City and County of Honolulu, State of Hawaii, SAMUEL WALKER, also known as SAMUEL AHSAN, <u>. . .</u> did operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to guard against casualty, thereby committing the offense of [OVUII] <u>. . .</u> .

(Emphasis added). Following <u>Wheeler</u>'s attendant circumstance requirement, Walker's charge fails to "set forth the essential elements of the included offense" required for an OVUII charge under HRS §§ 291E-61(a)(1) and (b)(1) (Supp. 2007) as the charge did in <u>Kekuewa</u>, 114 Hawai'i at 426, 163 P.3d at 1163. Furthermore, because Walker's lesser-included charge is missing an essential element, it cannot "reasonably be construed to charge the crime of [OVUII] as a first offense[]" in violation of HRS §§ 291E-61(a)(1) and (b)(1)" as the lesser-included charge did in <u>Ruggiero</u>, 114 Hawai'i at 240, 160 P.3d at 716.

Because Walker's lesser-included charge fails to allege an essential element of the crime of OVUII as a first offense, it would fail to confer jurisdiction to the circuit court. To remand Walker's case with instructions to enter judgment of

conviction and sentence based on such a jurisdictionally defective charge would be clearly erroneous and in contravention of constitutional principles.[26]

### iii. The ICA properly followed <u>Wheeler</u> in remanding <u>Walker</u> to the circuit court with instructions to dismiss without prejudice.

In <u>Wheeler</u>, because the charging document failed to allege an essential element of the charged crime, this court affirmed the ICA's judgment vacating and remanding the case to the trial court with instructions to dismiss without prejudice. <u>Wheeler</u>, 121 Hawaiʻi at 390, 400, 219 P.3d. at 1177, 1187. Similarly, because Walker's charge failed to allege an essential element of the charged crime (<u>i.e.</u>, proof of three or more convictions within the previous ten years), the ICA properly remanded Walker's case to the circuit court with instructions to dismiss without prejudice. <u>Walker</u>, 2011 WL 4537771 at \*12.

B. <u>Walker's statement to Officer Hill and the results of his HGN test were not required to be suppressed.</u>

Walker also argues that the ICA gravely erred in failing to analyze and suppress his statement to Officer Hill that he drank eight or nine beers and in failing to analyze and exclude the results of his performance on the HGN test. Though

---

[26] Because, as discussed <u>infra</u>, we hold that the circuit court lacked jurisdiction, Walker's contention that the ICA was required to remand for entry of judgment of conviction and sentencing on the lesser-included offense need not be reached.

the ICA majority declined to address Walker's points of error in this regard, Chief Judge Nakamura accurately clarified that Walker's arguments lack merit.  Neither of these arguments entitle Walker to relief.  The circuit court specifically found:

> Even without considering [Walker's] admission of drinking [eight] or [nine] beers and his performance on the HGN phase of the SFST, this Court finds that [Walker] was under the influence of an intoxicant as he drove on a public street and was impaired beyond a reasonable doubt under State v. Ferm, 94 Haw[aiʻi] 17, 25, 7 P.3d 193, 202 (2000) and State v, Vliet, 91 Haw[aiʻi] 288, 293-94, 988 P.2d 189, 194-95 (1999).

As articulated by Chief Judge Nakamura, "[t]he [c]ircuit [c]ourt's ruling establishes that any error in failing to suppress Walker's statement and in admitting evidence of his performance on the HGN test was harmless beyond a reasonable doubt."  Walker, 2011 WL 4537771 at *13-14 (Nakamura, C.J., dissenting).  "[E]ven without Walker's statement or the HGN evidence, the [c]ircuit [c]ourt would have found Walker guilty of Habitual OVUII."  Id. at *14 (Nakamura, C.J., dissenting).  Similarly, the State correctly contends,

> [t]he record in this case reflects that the admission of [Walker's] statement and the HGN testimony were harmless beyond a reasonable doubt because they did not . . . contribute to his conviction, inasmuch as there was sufficient evidence that [Walker] was driving on a public road "[w]hile under the influence of alcohol in an amount sufficient to impair [his] normal mental faculties or ability to care for [himself] and guard against casualty[.]"  HRS § 291E-61.5(a)(2)(A).

Furthermore, "[w]here there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt," as concluded by the circuit court in this

40

case, "errors in the admission or exclusion of evidence are deemed harmless." State v. Toyomura, 80 Hawai'i 8, 27, 904 P.2d 893, 912 (1995). Accordingly, the ICA majority did not err by failing to analyze the circuit court's denial of Walker's Motion to Suppress.

## IV. CONCLUSION

For the foregoing reasons, we hold that an appellate court's remand for entry of judgment of conviction and sentencing for a lesser-included offense must be based on a jurisdictionally valid lesser-included charge. Accordingly, we affirm the judgment of the ICA.

On the briefs:

Henry P. Ting,
Deputy Public Defender,
for petitioner/defendant-
appellant

James B. Anderson,
Deputy Prosecuting
Attorney, for respondent/
plaintiff-appellee

/s/ Simeon R. Acoba, Jr.

/s/ James E. Duffy, Jr.

/s/ Sabrina S. McKenna

